THE MISSOURI PACIFIC RAILWAY COMPANY v. J. W. SHARITT.

RAILWAY EMPLOYÉ—*Action for Wages* — *Garnishment in Another State* — *No Defense.* Where an employé and resident of this state performs labor in this state for a railway company, a corporation of another state, but also doing business in this state, and the wages of such employé are exempt in this as well as in the other state, *held*, in an

action by the employé to recover such wages in this state, the fact that the corporation has been garnished in such other state by a creditor of such employé before the bringing of this action in this state and service of summons obtained upon the employé only by publication, is no defense to such action.

*Error from Franklin District Court.*

J. W. SHARITT brought this action on the 27th day of July, 1887, against the *Missouri Pacific Railway Company*, to recover wages due him. The action was brought before a justice of the peace in Franklin county, and judgment was rendered against the defendant. An appeal was taken to the district court, which made findings of fact and conclusions of law as follows:

"1. Plaintiff was in the employ of the defendant at Council Grove, Kansas, during the month of June, 1887, performing manual labor in and about coupling cars and making up trains, and the like, and was styled a 'yard master.'

"2. As such laborer he earned and became and was entitled to receive from the defendant for such month's services the sum of $79 — of which sum $75 has not been paid.

"3. Plaintiff is a citizen, resident and householder of the state, and has been for more than two years last past. During said month of June, 1887, and ever since, the defendant had a family, to wit, a wife and three children, supported by his labor, and his said earnings were necessary for the support of said family.

"4. While the action was pending before the justice, it appeared that certain garnishee proceedings were pending in Morris county, Kansas, whereby it was sought to subject said wages to the claim of a certain party there, and it was then agreed between the attorneys for the respective parties in this case that the suit here should be continued ten days, and that if in the meantime said garnishee proceedings were dismissed, the defendant would pay plaintiff's claim or submit to judgment thereon if plaintiff would pay costs; accordingly, at the expiration of said ten days said proceedings having been dismissed, the justice entered judgment accordingly. On the 13th day of July, 1887, at St. Louis, Mo., the defendant company was garnished by and before a justice of the peace of that state, at the suit of W. P. Stewart, a resident of Missouri, against said J. W. Sharitt, and ordered to answer therein, in

which it did on July 28, 1887; and the company was on September 29, 1887, ordered to pay into that court the amount so due the plaintiff. The plaintiff Sharitt, defendant in that suit, was not served in said action otherwise than by publication. From the order so requiring said company to pay said moneys, the said company appealed to the circuit court of St. Louis county, Missouri, which said action is now pending and undetermined. Neither party nor their attorneys had notice or knowledge of these proceedings in St. Louis when the agreement referred to in the fourth finding was made.

"I conclude as matter of law that said personal earnings were and are exempt from the payment of plaintiff's debts, and that he is entitled to recover the same in this action, and judgment will be rendered accordingly."

Judgment thereon was rendered for the plaintiff at the October term, 1887. Defendant brings the case here.

*John W. Deford,* and *Waggener, Martin & Orr,* for plaintiff in error.

*Enoch Harpole,* for defendant in error.

Opinion by CLOGSTON, C.: It is not contended that the claim sued on is not exempt under the exemption laws of this state, but it is contended that because the garnishment proceedings were commenced in Missouri, and the court of that state obtained jurisdiction of the subject-matter before this suit was brought in Kansas, for that reason the defendant company became liable under its answer in Missouri under said proceedings, and should not again be held liable in this state in this action. The plaintiff in error recognizes the rule laid down by this court, that if the garnishment proceedings had been commenced in this state, no question could have been raised; and also recognizes the rule adopted in this state that the garnishee has the same right in his answer to raise all the questions that the debtor himself might raise, and plead the exemption law as completely as the debtor might plead it. But plaintiff in error says no such rule exists in Missouri; that under the decisions of that state it is precluded from asserting this right, and therefore if it is compelled to

pay this judgment, it will again have to pay the claim under its answer in Missouri. This seems to present a hardship; but as the claim is exempt under the laws of this state, and presumably exempt under the laws of Missouri—for it is presumed, in the absence of any showing to the contrary, that the laws of Missouri are the same as the statutes of this state —therefore, if this claim is exempt under both the laws of Missouri and of Kansas, it would be unjust to the defendant in error if by reason of some construction of the statute of Missouri he should be prevented from securing the benefit of the exemption. It has been held in this state that the garnishee may plead the exemption laws and be protected thereby as completely as the debtor would be. (*Mull v. Jones*, 33 Kas. 112.) This seems to be the well-recognized doctrine elsewhere; and, while there is some conflict in the authorities on this subject, the great weight of authority is with our court.

We see no reason why an exception should be made in this case, to a rule so well established. Under the rule laid down in *Mo. Pac. Rly. Co. v. Maltby*, 34 Kas. 131, and *K. C. & J. C. Rld. Co. v. Gough*, 35 id. 1, this judgment must be affirmed. (See also, *Drake v. L. S. & M. S. Rly. Co.*, 69 Mich. 168; 37 N. W. Rep. 70.) Under those decisions, this claim would be exempt to the plaintiff below had he resided either in the state of Missouri, or, as he does, in Kansas, and such exemption ought to be a good defense for the defendant company in Missouri.

It is therefore recommended that the judgment of the court below be affirmed.

By the Court: It is so ordered.

HORTON, C. J., and JOHNSTON, J., concurring.

VALENTINE, J.: I concur in the decision of this case, for the reason that I believe it is sustained by reason and the weight of authority. It seems to be generally held that the laws of any country where a debt is created enter into the contract upon which the debt is founded, so far as they are applicable and material, and form a part thereof. (*Greer v.*

*McCarter*, 5 Kas. 18, 22; *Deering v. Boyle*, 8 id. 532, *et seq.*, and cases there cited.)   Also, in the absence of anything to the contrary, it will be presumed by the courts that the laws of all the other states are similar to their own. ( *Furrow v. Chapin*, 13 Kas. 107; *Dodge v. Coffin*, 15 id. 285, *et seq.*, and cases there cited; *K. P. Rly. Co. v. Cutter*, 16 id. 568; *Baughman v. Baughman*, 29 id. 284.)   And when the *situs* of a debt is changed from the state or jurisdiction in which the debt was created, to some other state or jurisdiction, all its incidents and conditions materially affecting it will be transferred with it, and its interpretation, scope and validity will be governed by the *lex loci contractus.*   For instance, if the debt is exempt from judicial process in the state where it is created, the exemption will follow the debt as an incident thereto into any other state or jurisdiction into which the debt may be supposed to be carried. (*Drake v. L. S. & M. S. Rly. Co.*, 69 Mich. 168; same case, 37 N. W. Rep. 70; *Wright v. C. B. & Q. Rld. Co.*, 19 Neb. 175; same case, 27 N. W. Rep. 90; *Baylies v. Houghton*, 15 Vt. 626; *Pierce v. C. & N. W. Rly. Co.*, 36 Wis. 283.   And see, especially, the opinion in the case of *Mo. Pac. Rly. Co. v. Maltby*, 34 Kas. 125, 128, *et seq.*)   In the language of the Michigan case above cited, the exemption of the debt from judicial process " becomes a vested right *in rem*, which follows the debt into any jurisdiction where the debt may be considered as going."   Also the *situs* of a debt is either with the owner thereof, or at his domicile, or where the debt is to be paid; and it cannot be subjected to a proceeding in garnishment anywhere else.   See the numerous authorities hereafter cited, commencing with the case of the *L. & N. Rld. Co. v. Dooley*, 78 Ala. 524.   I shall now proceed to consider this case with reference to its facts.

The Missouri Pacific Railway Company, a Missouri corporation doing business in Missouri and Kansas and other states, and operating over 2,000 miles of railway in Kansas, owes a debt, not evidenced by any instrument in writing, to J. W. Sharitt, a resident of Kansas, for wages earned by him as yard master for the railway company at Council Grove, Kansas,

and presumably payable at that place; which wages are, under the laws of Kansas, and presumably under the laws of Missouri, as nothing appears to the contrary, exempt from execution, attachment, garnishment and other process. W. P. Stewart, a resident of Missouri, who puts forth the claim that Sharritt owes him, instituted a garnishment proceeding before a justice of the peace of that state against the railway company to procure the payment to him of the debt which the railway company owes to Sharitt. Such proceeding is now pending in the circuit court of St. Louis, Missouri. No service of summons was ever made upon Sharitt in that case except by publication. The question now arises, and it is the principal question involved in this case, whether Sharitt is bound by such garnishment proceedings, or not. Now unless the Missouri court has jurisdiction of Sharitt, or of something belonging to him, of course the proceeding is void as to him. And as no personal service of summons was ever made upon him, it will be admitted that the proceeding is without jurisdiction and void as to him personally. But the further question remains: Is the proceeding without jurisdiction and void as to any property belonging to Sharitt? Or in other words, has the Missouri court any jurisdiction as against Sharitt over the debt which the railway company owes to Sharitt? Sharitt is not a resident of Missouri, nor is he in that state, but on the contrary, he is a resident of Kansas and in Kansas; and he has never been served personally with any summons in the garnishment proceeding. The debt is not evidenced by any written instrument, but if it were, the instrument would presumably be in Kansas and in the hands of Sharitt. It is not payable in Missouri, but on the contrary, it is presumably payable in Kansas, where it was created and where Sharitt resides; and in Kansas, and presumably in Missouri, it is exempt from all judicial process. It is not claimed that the railway company has ever set apart any fund, either in Missouri, or in Kansas, or elsewhere, for the purpose of paying this particular debt; hence there is no specific fund connected with this debt, nor any tangible thing to which any

jurisdiction could attach. But if it should be supposed that any particular fund had been set apart to pay this debt, then it should be supposed that it was so set apart in Kansas, as the debt was created in Kansas, is already due in Kansas, and is payable in Kansas; and probably the railway company could not set apart a fund in Missouri so as to defeat Sharitt's claim in Kansas. The debt is really and in fact a mere *chose* in action resting wholly in parol, and is of such an intangible character that it could not be actually seized by any kind of process. And it can hardly be said to have any *actual situs* anywhere; but if it should be considered as having any actual *situs* anywhere, then its more natural *situs* is where it is to be paid, in Kansas and to Sharitt. It is seldom, and perhaps never, held that the property in a debt, a mere *chose* in action, can be carried around with the debtor wherever he may go, and exist wherever he may be. (Drake on Attachment, §§ 474, 481; Wade on Attachment, § 344; *Wheat v. P. C. & Ft. D. Rld. Co.*, 4 Kas. 370.) But, on the contrary, the *situs* of a debt is generally held to be with the creditor or at his domicile, or at the place where it is made payable. It is the creditor that owns the debt, and not the debtor; and the *situs* of the debt must be considered as being either with the owner or at his domicile, or where it is to be paid. Indeed, the more natural *situs* of any contract, whether a debt or not, would seem to be where it is to be performed. Even tangible property is not subject to garnishment proceedings in a state or jurisdiction in which the property is not situated. See the above authorities, and also *Bates v. C. M. & St. P. Rly. Co.*, 60 Wis. 296, 304, 305. See also *Sutherland v. National Bank*, 78 Ky. 250. Now under the facts of this case, we do not think that the Missouri court has any jurisdiction either of Sharitt or of anything belonging or appertaining to him, and hence the garnishment proceeding is void as to him. We think the weight of authority sustains this view of the case. See the authorities already cited, and also the following: *L. & N. Rld. Co. v. Dooley*, 78 Ala. 524; *Lovejoy v. Albee*, 33 Me. 414; *Lawrence v.*

*Smith,* 45 N. H. 533; *Miller v. Hooe,* 2 Cranch, C. C., 622; *Hamilton v. Rogers,* 67 Mich. 135; same case, 34 N. W. Rep. 278; *Drake v. L. S. & M. S. Rly. Co.,* 69 Mich. 168; same case, 37 N. W. Rep. 70; *Baylies v. Houghton,* 15 Vt. 626; *Towle v. Wilder,* 57 Vt. 622; *Wright v. C. B. & Q. Rld. Co.,* 19 Neb. 175; same case, 27 N. W. Rep. 90; *Pierce v. C. & N. W. Rly. Co.,* 36 Wis. 283; *Tingley v. Bateman,* 10 Mass. 343; *Nye v. Liscombe,* 21 Pick. 263; *Sawyer v. Thompson,* 4 Foster, 510; *Western Rld. Co. v. Thornton,* 60 Ga. 300; *Green v. Farmers' Bank,* 25 Conn. 452; *Cronin v. Foster,* 13 R. I. 196; *Bates v. N. O. J. & G. N. Rld. Co.,* 4 Abb. Pr. 72; *Willet v. Equitable Ins. Co.,* 10 id. 193; *Noble v. Thompson Oil Co.,* 79 Pa. St. 354; same case, 21 Am. Rep. 66; *Myer v. L. L. & G. Ins. Co.,* 40 Md. 595; *Williams v. Ingersoll,* 89 N. Y. 508, 523; *Green's Bank v. Wickham,* 23 Mo. App. 663; *Fielder v. Jessup,* 24 id. 91; *Keating v. Am. Ref. Co.,* 32 id. 293; *Todd v. Mo. Pac. Rly. Co.,* 33 id. 110; *Wheat v. P. C. & Ft. D. Rld. Co.,* 4 Kas. 370. As before stated, it is not the debtor who can carry or transfer or transport the property in a debt from one state or jurisdiction into another. The *situs* of the property in a debt can be changed only by the change of location of the creditor, who is the owner thereof, or with his consent.

It will be seen from what has been said that my concurrence in the decision in this case is founded almost wholly upon the theory that the Missouri court has no jurisdiction of Sharitt or of anything belonging or appertaining to him, and therefore that there can be no such thing as a *lis pendens* by virtue of the Missouri proceeding with regard to the subject-matter of this action, which is the debt, and nothing in the Missouri proceeding that can be considered as valid or binding as against Sharitt. And all my argument is also based upon the theory that the court first obtaining *jurisdiction* of the subject-matter of an action has the superior right to exercise jurisdiction over such subject-matter. But not wishing to be misunderstood in this case, I will be a little more explicit as to some matters. I think that the Missouri court has jurisdiction of Stewart, the plaintiff in the Missouri action,

and of the railway company, the garnishee; and that any judgment or order which might be rendered or made by the Missouri court as against Stewart or the railway company, would be valid and binding as against them.  And if Stewart, the plaintiff in that action, had obtained personal service of summons in Missouri upon Sharitt, then any judgment or order which might be rendered or made by the Missouri court as against Sharitt or against the garnishee, would also be valid and binding as to Sharitt.  And even without personal service of summons upon Sharitt, if he had any tangible property in Missouri which the Missouri court could seize, even money in the hands of some other person, any judgment or order of such court which might be made or rendered after the seizure of such property would be valid as against Sharitt.  And further, if it could be considered that the debt owing by the railway company to Sharitt had a *situs* in Missouri, then any judgment or order made or rendered by such court respecting such debt would be valid; and if Sharitt were a resident of Missouri, or was even temporarily there at the time of the attempted seizure of the debt, or if the debt was made payable in Missouri, it might perhaps be considered that the debt had such a *situs* in Missouri that it might be subject to the order or judgment of the Missouri court.  But none of these things exist in this case, and hence, in my opinion, the Missouri court has no jurisdiction of Sharitt or of anything appertaining or belonging to Sharitt.  Of course the laws of a state can have no extra-territorial force, and therefore if exempt tangible property, such as could be seized by process, were carried into another state or jurisdiction, such property might cease to be exempt, and might be seized and held in attachment or garnishment proceedings for the payment of debts; but debts existing in Kansas are not at the same time that kind of property in Missouri.  Whether what we have just said with respect to tangible property, would apply to debts created under contracts made under laws exempting such debts from all judicial process, it is not necessary in this case to express any opinion.  But generally, contracts with respect to everything of substance

inhering in them (and the laws of the country where the contracts are made, so far as such laws affect the contracts, are generally considered as inhering in the contracts) are governed and determined by the *lex loci contractus*, in whatever jurisdiction the construction or character of such contracts comes into consideration. Several cases are referred to as enunciating doctrines adverse to the views herein expressed, to wit: *Ferguson v. Bank of Kansas City*, 25 Kas. 333; *B. & M. R. Rld. Co. v. Thompson*, 31 id. 180; *Zimmerman v. Franke*, 34 id. 650; *Stark v. Bare*, 39 id. 100; *Daniels v. Clark*, 38 Iowa, 556; *Moore v. C. R. I. & P. Rld. Co.*, 43 id. 385; *Leiber v. U. P. Rly. Co.*, 49 id. 688; *Mooney v. U. P. Rly. Co.*, 60 id. 346; same case, 14 N. W. Rep. 343; *Green v. Van Buskirk*, 7 Wall. 139; *Connor v. Hanover Ins. Co.*, 28 Fed. Rep. 549; *Morgan v. Neville*, 74 Pa. St. 53; *Osborne v. Schutt*, 67 Mo. 712; *Blake v. Williams*, 6 Pick. 285; *Sturtevant v. Robinson*, 18 id. 175; *B. & O. Rld. Co. v. May*, 25 Ohio St. 347; *Snook v. Snetzer*, 25 id. 516; *E. T. Va. & Ga. Rld. Co. v. Kennedy*, 83 Ala. 462. Scarcely any of the above cases have any application to the question whether a court of one state, by virtue of a garnishment proceeding against a resident garnishee, but against a non-resident and absent defendant residing in another state and owning a debt created and payable to him in his own state, and by virtue of a service of summons upon the defendant only by publication, could obtain sufficient jurisdiction over the non-resident and absent defendant, or over the debt created and payable to him in the state of his residence, that such court could render a judgment or make an order against the garnishee that would be valid and binding as against the defendant. The case of *B. & M. R. Rld. Co. v. Thompson*, 31 Kas. 180, is relied upon principally among the Kansas cases, but no such question was presented or decided in that case. In the opinion in that case it is said, among other things:

"Again, no question arises here as to the effect of a judgment against the garnishee in the courts of this state as against proceedings to collect the debt in the state of Nebraska, where

the debt was created. As to that question, the cases of *Pierce v. Rld. Co.* [36 Wis. 283] and *Moore v. Rld. Co.* [43 Iowa, 385] seem to be divergent. As to which states the law correctly, we need not now inquire. The question is this case is not what is the effect of a judgment against a garnishee, but what ought to be such a judgment." (31 Kas. 194.)

In the leading Iowa case of *Moore v. Railroad Co.*, 43 Iowa, 385, *jurisdiction was conceded.* (See opinion, page 387.) This was also the case in the case of *B. & O. Rld. Co. v. May*, 25 Ohio St. 347. In that case jurisdiction was admitted by the pleadings. In the case of *Blake v. Williams*, 6 Pick. 285, the question was not one of jurisdiction, but one of assignment. Besides, the actual *situs* of the debt in that case was in all probability just where the proceedings were commenced. The debt was probably payable there. The case of *Green v. Van Buskirk*, 7 Wall. 139, has no application to this case. No debt was attempted to be taken in attachment or garnishment in that case. The case of *Connor v. Hanover Ins. Co.*, 28 Fed. Rep. 549, has perhaps some application to this case, though it certainly does not furnish much authority against the views herein expressed; it also criticises unfavorably the decision made by this court in the case of *B. & M. R. Rld. Co. v. Thompson*, 31 Kas. 180; same case, 18 Cent. L. J. 192. The case of *Morgan v. Neville*, 74 Pa. St. 52, is probably applicable; and yet the owner of the debt in that case was served personally with notice the next morning after the garnishment proceeding was instituted. This service of notice, however, was probably, for reasons not necessary to mention, not sufficient to give the foreign court jurisdiction. In the case of *E. T. Va. & Ga. Rld. Co. v. Kennedy*, 83 Ala. 462, the owner of the debt *was served personally* with summons in the foreign jurisdiction. It is unnecessary to mention more particularly the other cases cited for the railway company.

The principal argument urged against holding that the railroad company is liable in the present case is that by such holding, and by the possible judgment of the Missouri court, the company might be required to pay the debt twice. This

would certainly be wrong; but wherein would the wrong consist? If this court is right, should it refrain from doing its duty because of some possible wrong somewhere else? Should this court violate its own laws because some foreign court may ignore them? Besides, is the railroad company the only party entitled to sympathy? Is not the owner of the debt with his family also entitled to some consideration? The debt is his personal earnings, for his own personal services for less than three months, indeed, for less than one month next preceding the issuing of the garnishment process, and is necessary for the support of his family, and by the laws of his own state is exempt from the payment of his debts and from all judicial process. Now notwithstanding the fact that this fund is set apart by the laws of the state for the support of himself and family and is necessary for their support, may it be taken away from them by a foreign jurisdiction four or five hundred miles away—and it might be thousands of miles away; and possibly upon some false or trumped-up charge, without any personal service of summons upon him? Is he not entitled to have his day in court, and in a court that has first rightfully obtained jurisdiction of him personally, or of his debt? If it be said that the garnishee should serve notice upon him, then what is such notice for? Is such notice necessary in order to give the foreign court jurisdiction of the owner of the debt, or of the debt? Will it be admitted that without such a notice from the garnishee that the judgment or order rendered or made by the foreign court would be without jurisdiction and void as to the owner of the debt, and still claimed that with such notice such judgment or order would be valid and binding as to him? Besides, the garnishee might be unable to give the notice, and if he could not, then what? I would hardly think that such a notice could give jurisdiction to the foreign court if it did not have jurisdiction prior to that notice. Besides, why compel the owner of the debt upon such a notice to go four or five hundred miles or more to defend an action and thereby spend more money than the amount of his debt? It might be better for him and his family to

lose the debt entirely, and let the laws of the state setting it apart for the benefit and support of himself and family become nugatory and inoperative. Of course the debt in this case is small, only $79.75, but it is a great deal to the laborer who earned it and his family, and the state has set it apart for the support of his family, and the principle as to jurisdiction is the same as though the debt amounted to many thousands of dollars. If the rule contended for by the railroad company should be adopted, then it would be prudent for every creditor to continually watch his debtor, and to follow him around into every jurisdiction into which he might go, for fear that some unscrupulous person who really had no just claim might institute a garnishment proceeding and obtain the debt before the creditor could have an opportunity to prevent it.

I concur in affirming the judgment of the court below.