Reed, J.,
delivered the opinion of the court.
The appeal was taken by the garnishee. The questions presented are purely questions of law on the facts which are stipulated and shown by the record.
The questions to be determined are quite troublesome by reason of conflicting decisions in different states upon the same and similar statutes. We are greatly aided in the investigation' by the great ability and industry of the respective counsel in printed briefs and arguments. The case is presented with a thoroughness deserving great commendation.
The main question is, did the court obtain jurisdiction of the defendant through the proceeding by attachment and garnishment of the appellant?
•At the time of the making of the notes, both plaintiff and defendant resided in Kansas. The plaintiff removed to this state, and could proceed in the courts, provided jurisdiction of the defendant could be had. The defendant continued to reside in Kansas. No personal service could be had upon him. Only constructive service could be had, and that only by reason of the proceeding in re,m> The subject of attachment was a chose in action ; — an admitted indebtedness for labor performed by the defendant for appellant in Kansas, under a contract made in that state, to be performed and payment to be made in that state. Appellant, a corporation, created by that state, with its headquarters in that state, operated a line of railroad, or the continuation of a line, in this state.
The laws of a state have no extraterritorial force. There are two' well established and axiomatic principles of public law. The first is, “ that every state possesses exclusive jurisdiction and sovereignty over persons and property within its' territory.” The second is an outgrowth, and follows from the first, viz., “ that no state can exercise direct jurisdiction and authority over persons or property outside its territorial *89 limits.” Story on Confl. of Laws, chap. 2, and sec. 589; Wheat. Int. Law, part 2, chap. 2.
The statements of these well settled principles of public law are deemed necessary in disposing of one branch of the ease, urged with ability at some length by counsel for appellant, based upon the statement contained in appellant’s answer in the garnishee proceedings: “ That affiant is informed and believes that the defendant is a nonresident of the state of Colorado, a married man, the head of a family, and residing with the same; and that his wages are exempt to him under the laws of the state of Kansas.” It may be as well to dispose of this contention before taking up the discussion of the principal question. In view of the principles of law above cited, it becomes apparent that this is ancillary and dependent upon the finding in the main question. If the light attached was property in this state, and subject to attachment under state law, then the lex fori and not the lex loci contractus controls, and this practically disposes of the matter. If it was not property in this state, the entire proceeding was void for want of jurisdiction; if it was property within the state through which the court could enforce jurisdiction, then the laws of exemption of the state of Kansas, having no extraterritorial application, could not be pleaded 'effectually in this state.
I am aware that there are some authorities that seem to support the contention of counsel, notably Drake v. Railroad Co., 69 Mich. 168, where it is said in the opinion: “Yet when one entitled to such exemption keeps his person and his property within the locality of the contract, and does not enter, and is not brought, except by substituted service, within this state, he cannot, in reason and justice, be deprived of the exemption secured to him by the law of his domicile. * * * It must be held, I think, not only as a matter of simple justice, but as sound law, which means justice, that where the creditor, debtor and garnishee, at the time of the creation of both debts, are all residents and doing business in Indiana, and both debts are created, and intended to be payable, in *90 that state, the exemption of wages is such an incident and condition of the debt from the employer that it will follow the debt, if the debt follows the person of the garnishee into Michigan, and attach itself to every process of collection in this state, unless jurisdiction is. obtained over the person of the principal debtor; that it becomes a vested right in rem, which follows the debt into any jurisdiction where the debt may be considered as going.”
In, that case the creditor and debtor 'both resided in Indiana. The claim was sold and assigned to plaintiff in Michigan. The circuit court found that the claim was assigned for the purpose of instituting garnishee proceedings in the state of Michigan, and evading the exemption laws of the state of Indiana. I cannot understand how the motives or intention of the parties could affect the legal question, for the court did not place its decision upon the ground that no •legal title passed to the assignee, but upon the broad ground that the fund attached carried with it into the state of Michigan the protection of the exemption laws of the state of Indiana. It is a labored opinion, but so at variance with the general principles of law that we cannot follow it. If the criticism can be pardoned, it seems to be contradictory to itself. It says: “ When one entitled to such exemption keeps his person and Ms property within the locality of his contract,” etc. • If it was property of .the debtor in the state of Michigan, it was not kept within the state of Indiana when the respective contracts were made. Had it been kept, the questions discussed could not have arisen.
Wright v. Railroad Co., 19 Neb. 175, is cited and relied upon in the Michigan case, and also by counsel in this, but appears to have been entirely misunderstood. The case was in all particulars identical with this.' Plaintiff and defendant were residents of Iowa; the railroad company, garnisheed, operated its road in both Iowa and Nebraska; the contract for labor was made, the service performed, and payment to be made in the former state; suit by attachment and garnishment was instituted in Nebraska; the garnishee set up in the *91 answer the same defense as in this, but the statute of exemption applied was that of Nebraska and not that of Iowa. By sec. 581a, of the code of Nebraska, “the wages of laborers, mechanics and clerks who are heads of families * * * shall be exempt from the operation of attachment, execution and garnishee process; ” and although the head of the family and residing in “Iowa, the fund was held exempt in Nebraska by local law. An examination of the statutes in the different states exempting wages shows that in each case it depends upon the person being the head of the family and residing with them. The statutes can only he construed as applying to those who are residents of the state where the statute is enacted. Aside from the fundamental principle that laws can have no extra-territorial force, each state is supposed to protect only its own, and it is not to he presumed that the state of Nebraska intended to protect, the families of parties living in Iowa. Statutes of this character are passed — first, in the interest of humanity, to prevent the fund upon which the family is dependent for support being withdrawn and they left destitute; second, in the interest of the state, to protect the families of laboring men, so they would not become a public charge. No reasonable construction of the intention of the legislature could extend the act to the protection of those domiciled in other states. Such construction would lead to great confusion. A man might have property in three or four different states, and he could invoke the aid of the exemption laws of each, for the benefit of a family residing in one, when all exemption laws evidently contemplated but one exemption. In each state the condition precedent is that the man is the head of a family residing in the state where the aid of the law is invoked; and under every statute I have examined, the fact must not only be established, but the claim of exemption made. Like many other statutes, the right to exemption may he waived for want of a claim.
The only logical conclusion I can reach is that the Michigan court erred in importing the statute of Indiana and applying it, and the state of Nebraska in applying its own law for. *92 the protection of a family residing in another state. Both decisions were evidently dictated by humanity and justice, but, in my opinion, are put upon no sound legal basis, and are efforts at legislation instead of the application of laws. This is particularly apparent from an unguarded expression in the Nebraska opinion, when it is said: “ While the exemption laws of a state have no extraterritorial effect, yet they should he so construed as to give them effect.” Comment upon such a-sentence seems unnecessary.
The answer in both cases may, in our view of the case, be very brief. The laws for attachment and garnishment for the purpose of collecting the debt were those of the state of Michigan, the law of exemption that of the state of Indiana, and could no more be applied to prevent the collection and abrogate the laws of Michigan than the law of attachment and collection laws of Michigan could be enforced in Indiana by reason of the debt having been contracted in Michigan. If the law of exemption of one state inheres in and attaches to a claim in another, the collection laws of the state where the contract was made must, of necessity, attach and go with it into any state where collection is attempted.
Any attempt to make state laws extraterritorial must be futile, and only result in complication and confusion.
Many authorities are cited in both the Michigan and Nebraska oases supposed to support the finding. Most of them are wanting in analogy, and others are only of value inferentially.
If the principle contended 'for in those cases is to prevail, it would seem to be in direct conflict with the fundamental public law that the operation of statutes is confined to the state; and it would also be destructive of the comity existing between different states.
II.
It is elementary that, under the circumstances, the power of the court to assume jurisdiction and inquire into the obligations of a nonresident was dependent upon the seizure of *93 property of the defendant within the jurisdiction of the court. Without such seizure no service could be had by publication. No judgment could have been entered against the defendant and none against the garnishee. The fundamental question in this case is, was the money due for services performed in Kansas, and payable there, property of defendant in this state ?
It is stipulated that appellant is a corporation and resident of the state of Kansas, but is shown to have been operating a part of its line in this state. It is also stipulated that the defendant is a resident of the state of Kansas, and that the wages sought to be reached were earned and payable there. If such fund could be reached by service of garnishment papers in this state, it must be obvious that the plaintiff: could have attached by garnishee proceedings at any station on its line where it had an agent, upon the theory that the claim was ambulatory, and had a situs in the office of each agent, regardless of location.
This cannot be the law, as between the plaintiff and defendant, the debt, beyond question, followed the domicile of the plaintiff, — that was its situs; but the indebtedness of the garnishee to the defendant did not follow the plaintiff. Its situs was by contract fixed where the services were performed and the payment to be made, and if such claim or indebtedness is property, in contemplation of the statute, the situs of such property was in Kansas and not in Colorado.
Care must be taken not to confound the indebtedness due from the defendant to the plaintiff with that due the defendant from the garnishee. They have no relation to each other whatever. Each has its proper situs, regulated by law or contract, or both.
The courts of the state could not abrogate the contract of the garnishee with the defendant, and compel a different performance.
There was no service upon the defendant; no appearance by him. The proceeding was only in rem, and the only jurisdiction obtained was by the attachment of property. If no *94 property was found and attached, there was no jurisdiction. As before stated, whether such a claim was property has been differently answered by different courts. That it is not for the purpose of conferring jurisdiction is plainly inferrible from the decisions of the federal courts. See Mason v. Beebe, 44 Fed. Rep. 556; Tappan v. Bank, 19 Wall. 490; McCarty v. City of New Bedford 4 Fed. Rep. 818 ; Pennoyer v. Neff, 95 U. S. 714; Cooper v. Reynolds, 10 Wall. 308.
In Pennoyer v. Neff, supra, it is said, at page 723: “ Every state owes protection to its own citizens; and, when nonresidents deal with them, it is a legitimate and just exercise of authority to hold and appropriate any property owned by such nonresidents to satisfy the claims of its citizens. It is in virtue of the state’s jurisdiction over the property of the nonresident situated within its limits that its tribunals can inquire into that nonresident’s obligations to its own citizens, and the inquiry can then be carried only to the extent necessary to control the disposition of the property. If the nonresident have no property in the state, there is nothing upon which the tribunals can adjudicate.”
In Cooper v. Reynolds, supra, Mr. Justice Miller said: “ But, if there is no appearance of the defendant, and no .¡service of process on him, the case becomes, in its essential nature, a proceeding in rem, the only effect of which is to subject the property attached to the payment of the demand. * * * The court, in such suit, cannot proceed unless the officer finds some property of defendant on which to levy the writ of attachment.” See Picquet v, Swan, 5 Mason, 35; Boswell’s Lessee v. Otis, 9 How. 336.
If the debt of the plaintiff and the choses in action followed or came with the owner into this state, — and upon this all authorities agree, — then the debt of the garnishee to the defendant, as fast as monthly wages were earned, followed the person of defendant, and had its situs at his domicile in Kansas, and could not, under any of the decisions, have been property in this state. Tappan v. Bank, supra; Mason v. Beebe, supra.
*95 In Everett v. Ins. Co., 4 Colo. App. 509, the same question, in connection with another, was presented and discussed ably and carefully by Bissell,-P. J., in which it was said, at page 516: “ It is as impossible by judicial construction as by legislative enactment to declare that property out of the state, having a domicile with the debtor or the creditor, is within the limits of the sovereignty for the purposes of a levy; ” and many authorities are cited to sustain the position.
Taking the states that have adjudicated this question and sustain our position, we find Massachusetts: Casey v. Davis, 100 Mass. 124; Gold v. Housatonic R. R. Co., 1 Gray, 424; and running back through an unbroken line to Blake v. Jones, 7 Mass. 28, the leading case, perhaps, being Nye v. Liscombe, 21 Pick. 263. In Maine: Columbus Ins. Co. v. Eaton, 35 Me. 391; Lovejoy v. Albee, 33 Me. 414. In New Hampshire: Several decisions, from Jones v. Winchester, 6 N. H. 497, to Lawrence v. Smith, 45 N. H. 533, the leading case being Sawyer v. Thompson, 24 N. H. 510. In New York there are numerous decisions, notably: Willett v. Eq. Ins. Co., 10 Abb. Prac. 193; Douglas v. Phœnix Ins. Co., 63 Hun, 393; Osgood v. Maguire, 61 N. Y. 524; Williams v. Ingersoll, 89 N. Y. 523. See, also, Green v. Farmers Bank, 25 Conn. 452; Baylies v. Houghton, 15 Vt. 626; Peck v. Barnum, 24 Vt. 75. Missouri, Nebraska, Kansas, Michigan, Illinois, Alabama and Mississippi are all in the same line. The states holding the contrary doctrine seem to be Pennsylvania, Ohio, Iowa, Georgia and North Carolina.
While Nebraska applies her own exemption laws to protect the wages of a defendant having a foreign domicile, and Michigan, Iowa, Wisconsin, and the United States circuit court for the southern district of Iowa, by Judge Shiras, held that the statute of exemptions of the state where the contract was made and the labor performed was inherent in and followed the fund into the foreign jurisdiction (see Mason v. Beebe, supra), a great majority of the state courts sustain the doctrine here contended for, and they appear to me far more logical and founded in better reason than any contrary doc *96 trine. One consideration alone should, in my judgment, be conclusive of the matter. If the situs of a debt, by a chose in action, follows the creditor, the wages of a laboring man' earned and paj^able in a foreign state have their situs with and at the domicile of the creditor who has never appeared in the foreign jurisdiction, and the fund is entitled to the protection of the laws of the situs where earned and paj’able, and is not property in the foreign state through which, by attachment proceedings, jurisdiction of the defendant could be obtained. This view of the law, by compelling a creditor to reach the fund, if at all, at its situs, gives the debtor the protection of the local law, and his family the benefit of all exemption laws intended for their protection. It in no way attempts to modify an existing contract between the garnishee and the laborer, or make a new one compelling the performance of the contract in another and different state from that in which it was made.
It has been held in the courts of several states that a judgment like the one under consideration, obtained in a foreign jurisdiction, in the same manner as this, even if paid and discharged by the garnishee, could not be pleaded and operate as a bar to a suit by the laborer for the collection of his wages at the place of domicile of the parties where the contract was made and was to be performed. The garnished corporations were made to pay the same wages twice, through no fault or negligence of their own. See Railroad Co. v. Chumley, 92 Ala. 317; Green v. Bank, 25 Conn. 452; Smith v. Railroad Co., 33 N. H. 337; Pierce v. Railroad Co., 36 Wis. 283; Reinier v. Hurlbut, 81 Wis. 24; Railroad Co. v. Baker, 122 Ind. 433; Mo. Pac. R. Co. v. Sharitt, 43 Kan. 380; Stark v. Bare, 39 Kan. 100; McCarty v. New Bedford, 4 Fed. Rep. 818; Cole v. Cunningham, 133 U. S. 107.
I think I have shown myself justified by the law in holding that the claim was not property in this state in contemplation of law, and that the court, through the attachment and attempted garnishment proceedings, obtained no jurisdiction whatever, and I think it far better to place the decision *97 on this broad and general ground than reaching practically the same result by importing the exemption laws of the state where the contract was made, giving them extraterritorial effect and operation, making them, as said, inherent in, and attached, like the tail of a kite, to the contract, and following it wherever it goes, thus giving a local remedial statute general application and effect coextensive with the United States.
The judgment of the district court will he reversed, the cause remanded with instructions to dismiss the proceedings and discharge the garnishee.
Reversed.