## TOOTLE et al. v. COLEMAN et al.

### (Circuit Court of Appeals, Eighth Circuit. March 11, 1901.)

### No. 1,459.

1. GARNISHMENT—DEBT DUE CREDITOR OF ANOTHER STATE SUBJECT TO.

   The right to garnish a debtor is not limited to the situs of the chose in action, and a garnishment by a citizen of one state of a debtor of the same state, whose creditor resides, whose debt was contracted and is payable in another state, is such an attachment of the chose in action as will authorize the court to obtain jurisdiction to dispose of it by publication of the summons against the defendant.

2. REMOVAL—ESTOPPEL FROM DENYING JURISDICTION.

   One who removes a case from a state to the federal court is estopped from attacking the jurisdiction of the latter upon any ground except that the court from which it was removed had no jurisdiction.

3. PARTY CONDUCTING DEFENSE IN ANOTHER'S NAME ESTOPPED BY JUDGMENT.

   One who instigates another to do a wrongful action, and, when the wrongdoer is sued, takes upon himself and conducts the defense of the case, is estopped from again litigating with the plaintiff in that action the issues there decided.

4. DEFECT OF PARTIES WAIVED BY FAILURE TO PRESENT BY DEMURRER OR ANSWER TO THE MERITS.

   A defect of parties plaintiffs or defendants through misjoinder or nonjoinder is waived by a failure to suggest the same by demurrer or answer.

5. CREDITOR INSTIGATING CONVERSION AND DEFENDING CONVERTER BOUND BY JUDGMENT AGAINST HIM.

   A creditor who indemnifies an officer against damages for seizing and converting property, and defends an action against the officer individually for the conversion, is estopped by the judgment against him from again litigating with the plaintiffs in that action the issues there decided.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the District of Kansas.

Kate Tootle, W. W. Wheeler, Joshua Motter, and F. S. Dameron, the plaintiffs in error, are the surviving members of the co-partnership styled Tootle, Hosea & Co., which in 1890 was composed of these plaintiffs in error and W. E. Hosea. Hosea died in 1893, and the plaintiffs in error continued the mercantile business of Tootle, Hosea & Co., assumed their liabilities, and received their assets, as partners under the name of Tootle, Wheeler & Motter. On January 10, 1890, Tootle, Hosea & Co. commenced an action against Thomas Lynch, and caused a writ of attachment to be issued against him and delivered to the United States marshal for the district of Kansas. R. L. Walker was at that time the marshal, and they gave him a bond of indemnity in the sum of $4,102, conditioned, among other things, that they would pay all damages to him which should result from his seizure under this writ of attachment of "certain merchandise situated in the storeroom now occupied by Coleman & Lynch, on Douglas avenue, Wichita, Kansas." The Coleman & Lynch referred to in this bond were R. R. Coleman and C. T. Lynch, the defendants in error in this action. Walker seized their goods under this writ of attachment, and disposed of them. Coleman & Lynch brought an action at law against him in one of the state courts of Kansas for his seizure and conversion of their goods. He delivered the summons served upon him to the attorneys for Tootle, Hosea & Co., and they answered for him that the property which he seized was the property of Thomas Lynch, the defendant in the attachment suit, and that he had lawfully taken it under the writ in that action. This action resulted on December 4, 1895, in a judgment against

Walker for $4,873.20 damages and $214.42 costs. H. C. Solomon, John W. Adams, and George W. Adams were the attorneys for Tootle, Hosea & Co., who brought the attachment suit, and they continued to act for that firm until the plaintiffs in error succeeded them, and have since acted for the plaintiffs in error in all the litigation which has grown out of that attachment. They were hired and paid by Tootle, Hosea & Co. and their successors to defend Walker in the action just mentioned, and Walker neither paid nor agreed to pay anything for their services. On October 28, 1897, the defendants in error, Coleman & Lynch, commenced the action now before us. They were residents and citizens of the state of Kansas, and the plaintiffs in error were residents and citizens of St. Joseph, in the state of Missouri. For the sake of brevity, the plaintiffs in error will be called the "defendants," and the defendants in error the "plaintiffs," in speaking of this action. The defendants were conducting a mercantile business in St. Joseph under the name of Tootle, Wheeler & Motter, and various parties resident in Kansas were indebted to them in various sums, payable at St. Joseph, for goods purchased of them in that city. Coleman & Lynch sued the defendants in a state court in the state of Kansas, and garnished their debtors residing in that state. These debtors answered in the garnishee proceedings that they were indebted to the defendants in amounts which in the aggregate exceeded the claim of Coleman & Lynch. No service of summons was made upon the defendants otherwise than by publication under the statutes of Kansas. On December 11, 1897, the defendants removed this action to the United States circuit court for the district of Kansas. They then appeared specially in that court and moved to dismiss the action and to discharge the garnishees because the state court of Kansas had not acquired and could not acquire any jurisdiction over them by the garnishment of their debtors and the publication of the summons, and because the United States circuit court had acquired no jurisdiction. This motion was denied, and the defendants excepted.

For a cause of action, the plaintiffs alleged in their original petition that the defendants had directed and caused R. L. Walker, the United States marshal, to seize and convert their property. They also averred that they had brought the action and recovered against Walker the judgment for this conversion which has been recited, and that the defendants had employed and paid the attorneys and conducted the defense of that action for Walker, and were the real parties in interest therein. On motion of the plaintiffs these averments regarding the trial of the action and the judgment against Walker were stricken from the petition, and thereupon the plaintiffs filed an amended petition in which they alleged that the defendants instigated and caused the conversion of their property, and sought to recover the value thereof. The defendants answered with a denial of every allegation of the amended petition, and an averment that the property in controversy belonged to Thomas Lynch, the defendant in the attachment suit, and that it was lawfully levied upon by Walker under the writ in that action. The plaintiffs replied that the issues tendered by the plea of justification had been tried in the action between them and Walker; that, while Walker was the nominal defendant, the defendants were the real defendants in that action; that they had given the bond of indemnity which induced Walker to make the levy; that they had employed and paid the lawyers who defended him in the action against him for conversion; that they were the real defendants in that suit; that judgment had been rendered against Walker therein; and that all the issues tendered by the plea of justification became res adjudicata between the plaintiffs and defendants by virtue of that judgment. The defendants moved to strike from the reply all allegations referring to the trial and judgment in the action against Walker. They demurred to the reply. They moved to dismiss the action. They objected to any evidence under the pleadings, to the introduction in evidence of the pleadings and judgment in Coleman & Lynch against Walker, and insisted in every way possible that the trial and judgment in that case were immaterial to any issue in this action. The court below denied their motions, overruled their demurrer, received the pleadings and judgment in the Walker case in evidence, and refused to permit the defendants to contradict the findings in that case relative to the ownership of the goods seized by Walker and their value. The plaintiffs intro-

duced evidence. which was not contradicted, tending to show that Tootle, Hosea & Co. gave the bond of indemnity to Walker before he seized the goods of the plaintiffs; that he was a mere nominal party to the action of Coleman & Lynch against him; that the defendants were the real parties in interest in that action; that they hired and paid the attorneys who acted for Walker, and really inspired and conducted the defense. At the close of the evidence the court below instructed the jury to return a verdict for the plaintiffs for the amount of the judgment against Walker, and interest at 6 per cent. from the date of its entry. The defendants challenge this judgment by their writ of error.

John W. Adams and H. C. Solomon (George W. Adams, on the brief), for plaintiffs in error.

J. D. Houston (J. V. Daugherty, on the brief), for defendants in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The first objection urged against the judgment in question is that the court below was without jurisdiction because the state court of Kansas in which the action was commenced could not obtain jurisdiction over the defendants, who were residents and citizens of Missouri, or over the choses in action owned by them, by means of garnishment of their debtors, who resided in Kansas, and by service of the summons upon the defendants by publication at the suit of the plaintiffs, who were also residents and citizens of Kansas. The statutes of that state in terms authorize such garnishments, and the application of the amounts due to the defendants from the garnishees to the satisfaction of the plaintiffs' demand, upon publication of the summons against the defendants. Gen. St. Kan. 1897, c. 95, §§ 48, 72, 227, 228. The ground of the objection is that the situs of the choses in action attached by the garnishment was in St. Joseph, Mo., where the debts were contracted and were payable, and where the creditors of the defendants resided; and the argument is that these choses in action could not be attached where they were not located. This theory has received the sanction of the supreme court of Kansas in Railway Co. v. Sharitt, 43 Kan. 375, 23 Pac. 430, and the condemnation of the supreme court of the United States in Railroad Co. v. Sturm, 174 U. S. 710, 19 Sup. Ct. 797, 43 L. Ed. 1144, in which the Kansas case is reviewed and disapproved. There is no essential difference between the facts of the case in hand and those which conditioned the latter decision, and it is not only decisive of the issues in this case, but is in accord with reason, with the great weight of authority, and with the general understanding and practice of the profession. It is true, generally speaking, that the situs of a chose in action is the residence of its owner,—the domicile of the creditor. But the power to prescribe the remedies by which a debt may be collected and disposed of is not limited to the domicile of its owner. The creditor must often resort to the residence of the debtor to recover the amount due him, and must avail himself of the remedies prescribed by the debtor's state for this purpose. In this state of the case it is competent, just, and com-

mon legislation for the state of the debtor to provide for the protection of its home creditors by statutes which enable them to prevent their debtors residing in another state from taking out of the state the money due them from their debtors within the state, and from compelling their creditors to follow them into another state to collect moneys they justly owe them, while the debts to the home creditors can be more conveniently and speedily satisfied out of the moneys due to their debtors from debtors residing in their own state. Administration, attachment, and garnishment laws are all of this character, and they have met general approbation. They do not rest upon the proposition that the situs of the chose in action is the domicile or the state of the debtor, but upon the fact that the debtor himself is there, and that his state governs his acts, and may lawfully so prescribe and control the remedies for the collection and transmission to his creditor of the money he owes that justice shall be done not only to his creditor, but also to that creditor's creditor residing in the state of the debtor. They rest upon the fact that while the situs of the debt or of the personal property, for all the purposes of its ownership, is in the state of the creditor, yet the debtor has its control, its actual possession, and a legal notice to him places it in the custody of the law, and subject to the process of the court of the state in which he resides. This is solid ground. It is consonant with reason and with reality. It governs the administration of estates of deceased persons, concerning which Mr. Justice Gray, in Wyman v. Halstead, 109 U. S. 654, 656, 3 Sup. Ct. 417, 27 L. Ed. 1068, said, "The general rule of law is well settled that, for the purpose of founding administration, all simple-contract debts are assets at the domicile of the debtor." Wilkins v. Ellett, 9 Wall. 740, 19 L. Ed. 586, 108 U. S. 256, 27 L. Ed. 718. It lies at the foundation of the attachment and garnishment laws of the states, and sustains the action of the court below in this case. The origin of these laws is the custom of foreign attachment in the city of London. Under that custom the garnishee alone was summoned. The defendant received no notice, and at the conclusion of the proceedings the garnishee was required to pay his debt to the plaintiff, and was released from liability to the defendant. An attachment or garnishment is in the nature of a proceeding in rem. It proceeds upon the theory that the res is attached; that notice to the debtor or the party in control of the personal property places his obligation to pay or the property in his control at the disposition of the court. Such a notice attaches the debt,—the res; and, when this has been done, notice to the defendant which will give to the court ample jurisdiction to dispose of the thing attached may be given by publication, or by such other means as have been lawfully provided by statute, upon well-settled principles. Our conclusion is that the right to garnish a debtor is not limited to the situs of the chose in action, and a garnishment by a citizen of one state of a debtor of the same state, whose creditor resides, whose debt was contracted and is payable in another state, is such an attachment of the chose in action as will authorize the court to obtain jurisdiction to dispose of it by publication of the summons against the defendant. Rail-

road Co. v. Sturm, 174 U. S. 710, 19 Sup. Ct. 797, 43 L. Ed. 1144; Reimers v. Manufacturing Co., 70 Fed. 573, 574, 17 C. C. A. 228, 229, 37 U. S. App. 426, 429, 30 L. R. A. 364; Mooney v. Manufacturing Co., 72 Fed. 32, 38, 18 C. C. A. 421, 427, 34 U. S. App. 581, 592; Newland v. Reilly, 85 Mich. 151, 48 N. W. 544; Cofrode v. Gartner, 79 Mich. 332, 44 N. W. 623; Cahoon v. Morgan, 38 Vt. 236; Drake, Attachm. § 474; Embree v. Hanna, 5 Johns. 101; Blake v. Williams, 6 Pick. 286, 303; Harvey v. Railway Co., 50 Minn. 405, 407, 52 N. W. 905; Hardware Co. v. Lang, 127 Mo. 242, 246, 29 S. W. 1010; Howland v. Railway Co., 134 Mo. 474, 478, 36 S. W. 29.

The position of counsel for the defendants that, notwithstanding this rule of law, the state court had no jurisdiction of this case, because the supreme court of Kansas had decided in one case in 1890 that a court of that state could not obtain jurisdiction by the means here employed, while the decision of the supreme court in Railroad Co. v. Sturm, 174 U. S. 710, 19 Sup. Ct. 797, 43 L. Ed. 1144, had not been rendered when this action was commenced, in 1897, cannot be permitted to prevail, for two reasons: In the first place, the law was not changed by the erroneous decision of the supreme court of Kansas in Railway Co. v. Sharitt, 43 Kan. 375, 23 Pac. 430, and the power had been granted and the duty imposed by the legislature of Kansas upon its courts to take jurisdiction of actions of this kind by service of garnishment and publication of summons in the manner adopted in this case. Under this settled rule of law, the state court had jurisdiction notwithstanding the mistake of the supreme court of Kansas. In the second place, a single decision of the highest court of a state is insufficient to establish an erroneous rule of construction of the statutes of that state, clearly disapproved by the supreme court of the United States and the great weight of authority throughout the country.

It follows from this conclusion that the state court obtained sufficient jurisdiction of the subject of this action and of the defendants by the garnishment and the service of the summons upon the defendants by publication to authorize the disposition of the moneys due from the garnishees by the judgment of the court, and the defendants are estopped by their removal of the cause from attacking the jurisdiction of the federal court on any other ground. It does not lie in the mouth of one who has removed a case from the state to the federal court to claim that the latter has no jurisdiction of the case, except upon the ground that the court from which it was removed was without jurisdiction. Cowley v. Railroad Co., 159 U. S. 569, 583, 16 Sup. Ct. 127, 40 L. Ed. 263; Purdy v. Wallace Muller & Co. (C. C.) 81 Fed. 513, 515.

The next question for consideration is the effect of the pleading and evidence of the judgment between the plaintiffs and R. L. Walker, who was the United States marshal whose deputy levied the writ upon the property of the plaintiffs. The defendants gave to Walker the bond of indemnity which induced him to seize this property. The plaintiffs sued him for the conversion of these goods. The defendants hired and paid the lawyers who conducted his defense. These were the same lawyers who brought the attachment

suit, and who are protecting the defendants in the present case. In all this litigation they represented the defendants. While in the action against Walker they signed the pleadings and papers as his attorneys, they were in reality conducting these proceedings, defending the action, procuring evidence, cross-examining the witnesses of the plaintiffs, not only for Walker, but also for the real parties in interest,—the defendants who had indemnified him. The issues presented and tried in that case were whether the property seized by Walker belonged to the plaintiffs or to Thomas Lynch, the defendant in the attachment suit, and what the value of that property was when it was taken from the plaintiffs. The defendants, through their attorneys, conducted the trial of these issues in the action against Walker, and the jury found them in favor of the plaintiffs. While their names did not appear upon the record, they were the real defendants, the real parties in interest, and the parties who actually made and conducted the defense. The inevitable effect of these facts is that, in any suit between the plaintiffs and the defendants upon the same cause of action involved in the action against Walker, the issues concerning the title and the value of the property seized are res adjudicata, and cannot be again litigated. One who instigates another to do a wrongful act, and, when the wrongdoer is sued, takes upon himself and conducts the defense of the case, is estopped from again litigating with the plaintiff in that action the issues there decided. Lovejoy v. Murray, 3 Wall. 1, 18, 18 L. Ed. 129. The judgment against Walker was therefore a conclusive determination against the defendants of the issues whether or not the plaintiffs were the owners of the property seized, and of the value of that property.

But it is contended that in the pleading of this judgment and in its introduction in evidence many and fatal errors were committed. Let us first clearly understand the nature of this action, and then consider the soundness of this contention. This was not an action upon the judgment against Walker. It was an action for the same seizure and conversion of the property for which the judgment against Walker was rendered. But that judgment did not determine that these defendants were liable for or should pay the amount thereof. For this reason that judgment alone would not authorize the court to enter a judgment against the defendants. Other evidence was requisite to establish the proposition that they were liable for this conversion. It was necessary to try and determine issues which were not considered in the action against Walker, before the judgment against him would warrant a recovery against the defendants. Those issues were whether or not the defendants gave the bond of indemnity, and thereby instigated the taking and conversion, and whether or not they assumed and conducted the defense, and thus became the real defendants in the action against Walker. In other words, it was important to the plaintiffs' recovery here that they should establish four propositions: (1) That the defendants gave the bond of indemnity, and instigated Walker to take and convert the property; (2) that they assumed and conducted the defense to the action against him for the conversion; (3) that the property seized

was their property; and (4) its value. The judgment against Walker was no evidence of the first two propositions, but it was conclusive evidence against the plaintiffs of the last two. Thus it will be seen that the cause of action could not be based upon the judgment, but that it was for the conversion, and that it was necessary to establish two propositions by evidence dehors the record in the Walker case, while that judgment was conclusive evidence of the other two. We are now ready to consider the objections to the pleadings and the evidence of this judgment.

It is assigned as error that the trial court overruled the motion to strike from the reply that part which related to the judgment against Walker, and that it overruled a demurrer to the reply. There are two reasons why this judgment cannot be reversed on account of these rulings: The first is that the defendants pleaded new matter in their answer,—that the property seized was owned by Thomas Lynch, and was taken by Walker under the writ in the attachment suit against him,—and the averments in the reply concerning the judgment against Walker constituted a pertinent answer to this new matter, under the statutes of Kansas. Gen. St. Kan. 1897, p. 122, § 103. The argument that it was unnecessary for the defendants to plead this new matter, under the decision in Kerwood v. Ayres, 59 Kan. 343, 53 Pac. 134, in order to prove it, and that therefore the plaintiffs had no right to reply to it, is not persuasive. When the defendants unnecessarily pleaded this matter, they opened the door and invited the plaintiffs to reply to it. However, their remedy was not a motion to strike out part of the reply; it was not to pick the mote out of their brother's eye; but it was to take the beam out of their own, to cure their own fault, to withdraw the unnecessary new matter from their answer. This they did not do, and the motion to strike out this part of the reply was properly denied. The second reason is that the pleadings, proceedings, and judgment in the action against Walker were competent and conclusive evidence between the parties of the title to the property in controversy and its value; and if they were pleaded when they should not have been the only effect of this error was to give the defendants notice of this evidence earlier than they would otherwise have received it. This notice could not have prejudiced them, and error without prejudice is no ground for reversal.

It is insisted that the ruling of the court in striking the plea of this judgment from the original petition rendered the question whether or not it could be properly pleaded in the reply res adjudicata. But the two questions are not the same, and a court is not estopped before the trial of a case from correcting any erroneous ruling it may have made in the settlement of the pleadings.

It is said that the admission into the reply of this plea of the judgment against Walker constituted a departure in pleading. But the cause of action remained the same,—the taking and conversion of the property; and the plea of the judgment was a mere plea of an estoppel of the defendants from denying the truth of the two facts,—the title and the value of the property seized, whose existence was challenged by the new matter in the answer. There is no

departure from a cause of action for conversion to a cause of action on the judgment.

It is insisted that the court below should have dismissed this action at the trial because it appeared from the pleadings that Walker and the defendants were joint tort feasors, that the plaintiffs had elected to sue Walker separately, and that, having made that election, they could not maintain an action against the defendants jointly. This objection was that there was a defect of parties defendant. If there was any such defect, the defendants were required to present it by demurrer if it appeared on the face of the pleadings, and by answer if it did not. 2 Gen. St. Kan. 1897, c. 95, §§ 89–91. The objection here under consideration appeared upon the face of the original petition. It was not suggested by demurrer or by answer, and was first presented by a motion to dismiss the action upon the opening of the trial. The defendants' silence, and their answer to the merits of the case without suggesting the defect, waived this objection. Their motion came too late, and it was rightly overruled.

It is insisted that the pleadings and judgment against Walker were not competent evidence of the title and value of the property, because that action was not brought against Walker as marshal, and because the evidence does not establish the fact that the plaintiffs knew that the defendants were conducting Walker's defense. But it is not the name, title, or capacity in or under which Walker was sued that conditions the estoppel of the defendants by the judgment against him. It is the fact that they instigated the taking, and assumed and conducted the defense of the action for the taking, of the property of the plaintiffs. It was their own acts which estopped them, and it was utterly immaterial under what name or title they performed these acts. It made no difference, therefore, whether Walker was sued for this taking, and the defendants defended him as marshal, gentleman, yeoman, or man. They were equally estopped by their deeds.

Nor is the objection that this judgment can have no effect because the plaintiffs did not know that the defendants were defending Walker worthy of more serious consideration. H. C. Solomon, John W. Adams, and George W. Adams were the attorneys of Tootle, Hosea & Co. and of the defendants. As such attorneys they brought the action against Lynch and issued the writ of attachment. They defended Walker, and their names appear as his attorneys upon all the pleadings and papers of the defendant in that suit. It is the common, almost the universal, practice for plaintiffs who procure the levy of an attachment to defend the person who levies it, when he is attacked by third parties on account of his seizure of the property under the levy. We cannot be blind, and we cannot presume that the defendants were blind, to this fact. The names of the attorneys for the defendants upon the pleadings and papers of Walker raised a clear presumption that the defendants were conducting his defense, and, in the absence of contradicting evidence, this was sufficient evidence to warrant the conclusion that the plaintiffs were aware of this fact.

It is specified as error that one of the witnesses for the plaintiffs was permitted to testify that he handed to Solomon the bond of indemnity in the attachment suit in the presence of Wheeler, one of the defendants, and Solomon said: "I wrote that myself, and signed the name of Tootle, Hosea & Co. to it. We were not required to do anything further towards it." But this was certainly competent evidence against Wheeler, and Wheeler was a member of the copartnership composed of the defendants in this suit. He saw the bond, heard the testimony of his attorney, and silently admitted its truth.

It is contended that the court erroneously admitted a part of a letter written by H. C. Solomon, one of the attorneys of the defendants, on September 4, 1896, to R. L. Walker, in which he wrote that his clients were paying all the costs of the litigation growing out of the attachment suit against Lynch. But the testimony of one of the defendants was that he left the entire charge and control of this matter to his attorneys, and the evidence was conclusive and uncontradicted that this letter was written by Mr. Solomon, one of these attorneys, and that the portion of it which was not produced could not be found after diligent search. In this state of the case, it was a competent admission of the defendants that they were paying the expense of conducting the defense of Walker, as well as of the other litigation growing out of the seizure of the property of the plaintiffs.

After the plaintiffs had introduced in evidence the pleadings and judgment against Walker, and had produced evidence tending to show that the defendants gave the bond of indemnity to him before the writ was levied upon the property of the plaintiffs, and that they had assumed and conducted his defense of the plaintiffs' action against him, the court refused to permit the defendants to introduce evidence that the defendant in the attachment suit was the owner of the property, and directed the jury to return a verdict for the plaintiffs for the amount of the judgment against Walker, and interest from the date of its entry. It is contended that these rulings were erroneous, because the defendants were entitled to contest the title to the property in issue, because the evidence was insufficient to warrant the instruction, and because interest should have been allowed upon the value of the property, and not upon the amount of the judgment against Walker. There was no error in the exclusion of the evidence offered by the defendants, because the judgment against Walker rendered the title to the property res adjudicata as against them. The evidence was uncontradicted and conclusive that the defendants assumed and conducted Walker's defense, and that they gave him the bond of indemnity before he seized the property. But this was an action for damages for the taking and conversion of the property. It was not an action upon the judgment against Walker, and for that reason interest should not have been computed upon the judgment, but upon the value of the property converted. This error made the judgment $232.44 more than it should have been. The judgment of the court below is accordingly affirmed to the amount of $5,870.56, but it is not affirmed as to the remaining

107 F.—4

$232.44, or any part thereof. It is modified as to this amount, and the case is remanded to the court below, with directions to so modify its judgment of March 16, 1900, that it shall stand for the amount of $5,870.56, instead of for the sum of $6,103. Railroad Co. v. Estill, 147 U. S. 591, 622, 13 Sup. Ct. 444, 37 L. Ed. 292.