CHENEY (KNIGHT v.). See Case No. 7,883.

CHENEY, The W. E. See Case No. 17,344.

CHENOWETH (UNITED STATES v.). See Case No. 14,792.

---

## Case No. 2,638.

### CHEONGWO v. JONES.

[3 Wash. C. C. 359.][1]

Circuit Court, E. D. Pennsylvania. April Term, 1818.

ATTACHMENT—PLEA IN ABATEMENT — ACTION ON PROMISSORY NOTE—DEFENSES — CONTRACT FOR SALE OF GOODS — PERFORMANCE—WARRANTY—REMEDIES FOR FRAUD.

1. The defendant cannot plead a foreign attachment, levied by him in his own hands, in bar to an action against him, by the defendant in the attachment, so as to set off damages against the plaintiff; he must plead the attachment in abatement. If judgment be obtained in the attachment levied in his hands, he may offset the amount.

2. In an action upon a promissory note, where the plea is non assumpsit, the defendant cannot give evidence of damages sustained by a breach of the contract upon which the note was given.

3. Upon a Canton contract to deliver teas, the quality of the sample chests to be selected by A; If A select and accept of chests of an inferior quality, in performance of the contract, there is an end to the warranty; and the Hong merchant could only be liable for a fraud, in imposing on the defendant teas apparently of a particular quality, but actually inferior. He could not be bound to deliver the selected teas, which might be very inferior, and bound also to deliver teas of a better quality.

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the supreme court of the United States, under the supervision of Richard Peters, Jr., Esq.]

4. If the teas selected by A, were afterwards changed, the buyer was at liberty to rescind the contract, and refuse to take the teas, as soon as the fraud was discovered—even at Amsterdam, the place of their sale; and to recover back what had been paid; and also to refuse payment of the note given on the contract, on the ground of a failure in the consideration of the note; or he might affirm the contract, and claim damages.

The declaration contained three counts: 1, On a promissory note, subscribed by the defendant [William Jones], dated 26th November, 1805, at Canton, by which he promised to pay the plaintiff, by the name of Mr. Cheongwo, 9,102 dollars, for value received, in teas, twenty months after date; and if not paid at maturity, to pay at the rate of one per cent. per month interest, until paid: 2, goods sold and delivered: 3, an account stated. The defendant pleaded non assumpsit and payment, with leave to give in evidence, the following special matters: 1st. Failure of consideration; the goods for which the note was given, not having been delivered in quality according to contract: 2. A foreign attachment issued by the defendant against the plaintiff, in this court, to October sessions, 1811.

The defendant offered evidence to prove that he had sustained damages, by a breach of the plaintiff's warranty, of the quality of the teas, which constituted the consideration of the note; as well as for 8,000 dollars, paid to him when the note was given; and also, that the teas sold to him by the plaintiff, had not been delivered to him; but the plaintiff had delivered another parcel of an inferior quality. This evidence was rejected by the court, as inadmissible upon the pleadings, as damages could not be proved to have been sustained by a breach of the plaintiff's warranty, in order that the same might be offset against the note. The court stated, that in the case of Graigle v. Notnagle [Case No. 5,679] the only question decided by the court was, that a creditor might lay a foreign attachment in his own hands, and might proceed to obtain a judgment. There is no doubt but that this judgment might be pleaded in bar, by way of offset, or might be given in evidence, on notice. But the attachment itself cannot be pleaded in bar. Where it is pleaded by a garnishee, in a suit depending against him, it must always be in abatement. As the defendant could not, upon the general issue, give evidence of damages sustained by the plaintiff's breach of contract, in diminution of the debt for which the suit is brought, so neither can he be allowed to give such evidence, under his plea of foreign attachment. The parties then filed an agreement, in writing, that the defendant should be at liberty to give the evidence offered; and that the jury might deduct the amount of damages to which they might think him entitled, from the debt, for which suit was brought.

It appeared in evidence, that some time in November, or December, 1805, the plaintiff

entered into a verbal agreement with the defendant, then at Canton, that he would furnish him with 800 quarter chests of tea, one-half to be hyson skin, and the other congo, at stipulated prices; the quality of which should correspond with the samples which should be selected by Edward Gray, the defendant's supracargo, who should be the judge thereof; and upon his selection of the samples, the contract was to be carried into effect. Muster chests were accordingly sent to Mr. Gray, who, after examination, made his selection; and he declares, that he considered the quality of the samples to have been excellent. He afterwards examined and marked the chests, in the plaintiff's packing-house; and he states, that the qualities of the teas so examined, were excellent. The plaintiff delivered on board of the Eugenia, the number of quarter chests of tea stipulated by the above agreement to be furnished, which were carried to Amsterdam, and placed, in the usual manner, in the warehouses of the Asiatic Company, for sale; and which were disposed of at the public sales of the company, which took place in 1807. Mr. Gray stated, that he saw the teas at Amsterdam, when they were inspected by the servants of the company, and that their quality was most infamous. The hyson teas, in particular, were black, and the quality so inferior, that he thought they would not have sold in the United States for the duties. He was clearly of opinion, that the teas delivered on board the Eugenia, were not the same with those which he had examined and marked in the packing-house of the plaintiff. The boxes he believed to have been the same; but from the difference in the quality and size of the leads, which at Amsterdam were too small for the boxes, he was satisfied that the teas had been changed. It appeared from the public sales, made by the Dutch Company, in 1807, of different cargoes of teas, that the defendant's teas sold at prices very far below those of other teas of similar denominations, and of the best qualities. In 1807, Mr. Gray returned to Canton, and stated to the plaintiff the bad quality of the defendant's teas. The plaintiff entered into a written agreement, reciting this representation by Mr. Gray, of the bad quality of the teas; and promising to settle with the defendant, upon the same terms that other respectable houses at Canton had done; and, in case of a difference of opinion between the parties, to submit the same to arbitration. Mr. Gray, who was personally a sufferer by the bad quality of teas he had purchased from the plaintiff, effected a settlement at the same time with the plaintiff, upon the principle, as was contended by the defendant's counsel, of being allowed the difference between the sales of his teas, and those of other teas, of the same denomination and quality of the teas stipulated to be delivered. This was denied by the plaintiff's counsel; and no settlement was effected by Mr. Gray, relative to the defendant's teas. It was proved,

on the part of the plaintiff, that the quality of the tea crop, of 1805, was generally indifferent; and that the contract between these parties, was made at a very late period of the season, when the market was much exhausted. A witness, examined on the part of the plaintiff, also stated, that he had lived at Canton for ten years, and that it was very difficult for a person who had not, for a length of time, resided in China, to judge of the qualities of teas. That instances had sometimes occurred, of a few chests of teas being changed on board the Hong boats, by the mariners; but that he had never heard of an instance of a cargo being changed by the merchant who had sold it. The witness who testified to these facts, had been extensively engaged in business at Canton.

Rawle and Gibson, for plaintiff.

Mr. Binney, C. J. Ingersoll, and Mr. Dallas, for defendant.

WASHINGTON, Circuit Justice (charging jury). This is an action on a note of hand given at Canton, the signature of which is acknowledged by the defendant. But his counsel place his defence upon the two following grounds: 1st. That the consideration for which the note was given, was 800 quarter chests of tea, designated and marked, lying in the plaintiff's warehouse, which the plaintiff undertook to deliver on board of the Eugenia. That these chests were not delivered; but a different parcel of teas, not purchased by the defendant, were substituted, and put on board of the vessel. 2d. That if the identical teas, purchased by the defendant, were delivered, still they did not correspond in quality, with the samples selected by Mr. Gray; and, therefore, the defendant claims damages, for the breach of the warranty, to be offset against this note.

(The judge here stated the evidence in relation to the contract at large.)

Upon this evidence, it may not be improper, at this time, to make two general observations: 1st. That a Canton contract, for the purchase and delivery of teas, is always understood to mean, a delivery on board of the vessel which is to transport them, at Wampoa, or wherever the vessel is lying in the river. This not only results from the peculiar situation of the contracting·parties, but is known to ·be the common understanding; and was so proved by a witness, who was examined, and who was well qualified to testify on the subject. 2d. The other observation is, that Gray was appointed by the parties the judge of the samples, with which the cargo was to correspond; but having made the selection, his judgment as to the correspondence of the cargo with the samples, was not to bind either of the contracting parties. This observation is made, in answer to an argument urged by one of the defendant's counsel.

If the argument in support of the first point, made by the defendant's counsel, be well founded, then it is immaterial whether the teas delivered on board of the Eugenia, corresponded with the samples or not. The complaint is not that the quality of these teas was inferior to that of the sample; but that the identical teas, purchased by the defendant, and for which this note was given in part payment, never were delivered. But what part of the contract, bound the plaintiff to deliver any particular parcel of teas? The agreement was to deliver teas, which should correspond in quality and denomination with the selected samples; and if he did that, his warranty was fulfilled. If he did not, then he exposed himself to a claim for damages, for his failure. But he did not stipulate to deliver such teas as Mr. Gray might select; and there is no proof, that the teas selected and marked by Gray, in the packing-house, were the identical chops to which the selected samples belonged. All that is stated on this subject, is, that the teas so selected and marked, were of excellent quality. There is no doubt but that Mr. Gray might, as the agent of the defendant, if empowered to bind the defendant by the act, accept of the particular chests, which he marked, as a performance of the plaintiff's contract. But, in that case, there would be an end to the warranty; and the plaintiff could only be liable for a fraud, in imposing upon the defendant teas apparently of a particular quality, but really of a different and inferior quality. It would be monstrous to say, that he was bound to deliver the teas which Mr. Gray might select, and which might be very inferior to the samples; and that he was also bound to deliver teas of a better quality, or to answer for the consequences. If Gray's selection did not bind the plaintiff, the teas which he did select, were not the identical teas sold, and for which this note was given; and the plaintiff was therefore at liberty, notwithstanding the selection, to deliver other teas more correspondent, in his own opinion, with the quality of the samples. If the plaintiff was bound by Gray's selection, then he was unquestionably discharged from his warranty; because the teas were accepted in performance of the contract. The claim asserted, to the chests selected, and the claim for damages, for not delivering on board of the Eugenia teas of a particular quality, are totally inconsistent and inadmissible.

But, admit that the plaintiff was bound to deliver the teas which were selected and marked, is the evidence such as·ought to satisfy the jury that these teas were afterwards withdrawn from the chests, and other teas substituted? This is a fact of which the jury must judge, upon the evidence given on each side. Mr. Gray does not state that he examined all the chests, either at Canton or Amsterdam; nor does it appear in what manner he examined them. Whether he could decide with accuracy as to the size of all the

leads, without having had the boxes emptied of their contents, is a question for the consideration of the jury. As a further evidence of the incorrectness of the memory, as well as of the judgment of this witness, in relation to the alleged change of the teas, the plaintiff's counsel rely upon the testimony of Mr. Bleight, who deposes, that, in the course of the ten years he resided at Canton, he never heard of an instance of such a fraud being committed, either by one of the Hong, or by any out-door merchant. Should the jury, however, be satisfied, that the teas were selected by the defendant's agent, and were afterwards changed, the next inquiry is, what were the defendant's rights, in consequence of these acts, and how did he exercise them?

There can be no question, but that it was competent to him to rescind the contract, and to refuse to take the teas, even at Amsterdam, as soon as the breach of contract was perceived. In that case, he might recover back the money paid to the plaintiff, and exonerate himself from the payment of this note; upon the ground taken by his counsel, that there was a failure of the consideration for which it was given. Or, if he did not choose to take this course, he might affirm the contract, and claim damages for a breach of it. Did he do any act to rescind the contract? If he meant to do so, the teas ought to have been sold at Amsterdam, as the property of the plaintiff; whereas, they were sold as the property of, and for the account of, the defendant. But this is not all. In 1807, when his agent, Mr. Gray, returned to Canton, he made no complaint to the plaintiff, that the teas were changed, nor did he ask for a return of the money which had been paid by the defendant to the plaintiff, and also, that this note might be given up; but his objections were confined to the bad quality of the teas, for which reason he demanded compensation; and the plaintiff agreed to settle with him upon the same terms that other merchants had settled similar claims. These facts are stated at large in the written agreement, signed by the plaintiff and accepted by Gray, and must, therefore, be considered as conclusive on the defendant. Thus, it appears, that the defendant never thought of rescinding the contract, nor ever charged the plaintiff with the fraud now alleged; but, on the contrary, acted throughout in a manner to affirm the contract, and to confine his claim to a compensation in damages for a breach of it. It would be too much for the court to permit him now to change his ground, and to treat the contract as one made without consideration, or of which the consideration had failed.

2. The next question is, whether the contract between the parties has been fulfilled? The contract was to deliver teas, which should correspond in quality with the samples selected by Mr. Gray. This gentleman has deposed, that the quality of the samples which he did select was excellent. This is his expression; and the jury must decide on its correct meaning, when used by merchants in describing the quality of an article, which they are about to buy or sell. In common parlance, it certainly imports a quality of a high grade, if not the highest.

The next inquiry is, what was the quality of the teas delivered? Mr. Gray has sworn, that at Amsterdam he examined them, and that the quality was most infamous. It also appears, from the sale made of these teas by the Dutch Asiatic Company, that they sold for prices very inferior to other teas of the same denomination, and of a high grade of quality. But, after all, the quality of the samples selected by Mr. Gray, and, consequently, of the 800 quarter chests, which the plaintiff warranted should correspond with the samples, must be decided by the confidence which the jury may place, not only upon the veracity of that gentleman, (which has not been questioned,) but upon the accuracy of his memory and judgment, both of which have been.

It is contended, by the plaintiff's counsel, that the teas at the Canton market, of the crop of 1805, were generally of bad quality, and that the defendant's teas were purchased when the market was nearly exhausted, which would render them still worse; consequently, that Mr. Gray must be mistaken, when he states, that the samples, and the teas which he examined in the plaintiff's warehouse, were of an excellent quality. How far these facts impeach the credit of Mr. Gray, the jury must decide. But, if they believe that the quality of the samples has been correctly stated by this witness, then the circumstances just mentioned, afford no excuse to the plaintiff for delivering teas inferior in quality to the samples. If the market would not enable him to deliver teas of that quality, he ought not to have sent these samples; and if Gray refused to select inferior samples, the contract was at an end; because it was not to be concluded until the samples were selected. But when samples of a superior quality were sent and accepted, the plaintiff agreed to deliver 800 quarter chests, to correspond with them; and he cannot excuse himself, by alleging that he was unable to comply with this contract.

If the contract has not been fulfilled, the last inquiry is, what is the compensation to which the defendant is entitled? The rule laid down by this court in former cases like the present, is, to take the differences between the prices given for the teas of the injured party, at the Dutch sales, and other teas, of the quality which, by the contract, he was entitled to have, and of the same denomination, and to make that difference the rate of the injury sustained, to be applied to the first cost of the article, at Canton; to which is to be added the premium of insurance, duties, and all other usual expenses

and charges.—Thus, if the defendant's teas sold for 50 or 25 per cent. less than other teas, which would be designated as excellent, or thereabouts; the defendant is entitled to claim of the plaintiff, the same rate of this sum, which he gave for the teas at Canton, with the charges as before mentioned. The reasons for this rule are explained at large, in Gilpins v. Consequa [Case No. 5,452]; Youqua v. Nixon [Id. 18,189]; and Consequa v. Willings [Id. 3,128]. But if the parties have agreed to settle by any other rule, they are bound by it, and it is for the jury to decide, upon the testimony of Mr. Gray, taken in connexion with the agreements of the 27th November, 1807, whether any other, and what rule, was established between these parties.

As to the interest, I have only to repeat what was laid down by the court, in all the cases before mentioned, that the law does not sanction the allowance of interest upon unliquidated damages. Verdict for plaintiff.