HOWLAND v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, *Appellant*.

### Division Two, June 2, 1896.

1. **Debts, Situs of:** RESIDENCE OF DEBTOR: ATTACHMENT.   *Debts* have no *situs*, but may be attached in any state other than that in which the debtor is resident.

2. **Jurisdiction:** JUDGMENT: COLLATERAL ATTACK.   A distinction exists between jurisdiction and the mere exercise thereof, and where the jurisdiction of a court is full and complete, its judgment can not be attacked collaterally, although partially or totally erroneous.

3. **Judgment in Another State:** JURISDICTION: COLLATERAL ATTACK: GARNISHMENT.   The action of a justice of the peace in Iowa in refusing to allow an exemption to which a debtor was entitled under the laws of that state, in a garnishment proceeding against a resident of Missouri, commenced by publication and to which the debtor did not appear, can not be attacked collaterally in an action brought in this state by the debtor against the garnishee in the former proceeding.

4. **Exemption:** PERSONAL PRIVILEGE: PRACTICE.   An exemption is a personal privilege and can only be pleaded and taken advantage of by the execution or attachment debtor.

5. **Action for Debt:** GARNISHMENT OF DEBTOR IN ANOTHER STATE: PROTECTION OF GARNISHEE: PRACTICE.   Where in an action for debt the defendant answers that the debt has been garnished in another state, judgment should be given for the creditor with stay of execution until the garnishee is released from the garnishment.

*Appeal from Grundy Circuit Court.*—HON. P. C. STEPP, Judge.

REVERSED AND REMANDED.

*W. E. Clark* for appellant.

Under the agreed statement of facts the court below erred in rendering final judgment against appellant, because: *First.* The Iowa court in the garnishment proceedings set out had jurisdiction of the parties and the wages garnished. *Wyeth v. Lang*, 127 Mo. 242; 54 Mo. App. 147; 29 S. W. Rep. 1010; *Mooney v. Railroad*, 60 Iowa, 346. *Second.* While, under the agreed statement of facts, the Iowa court should have allowed respondent said wages as exempt, still that was a defense that could be interposed by no one but respondent; garnishee could not interpose it for him. *Osborne v. Schutt*, 67 Mo. 712; *Moore v. Railroad*, 43 Iowa, 385. True, appellant did attempt to set up said defense to the garnishment suit in Iowa, but the court there refused to allow said exemption. Garnishee, under the decisions last above cited, was under no obligation to further insist upon said defense, by appeal or otherwise. *Third.* By disregarding the Iowa attachment and garnishment proceedings the court below refused to give such proceedings the faith and credit to which they were entitled under the constitution of the United States. Const. U. S., art. 4, sec. 1.

*J. S. Parker* fo rrespondent.

(1) The judgment and finding of the circuit court is not in violation of the constitution of the United States. (2) Full faith and credit must be given to the judicial proceedings of a sister state, only when the

court of said state had jurisdiction of the subject-matter. *Wyeth Hardware Co. v. Lang,* 54 Mo. App. 149; *Cole v. Cunningham,* 133 U. S. 107. (3) The Iowa court in this case had no jurisdiction over the subject-matter. Sec. 3, chap. 102 of the acts of the Twenty-fifth General Assembly of the state of Iowa; R. S. Mo. 1889, sec. 5220; *Dunn v. Railroad,* 45 Mo. App. 37. (4) It is the duty of the garnishee to make the defense of want of jurisdiction in the court. *McCord, Nave & Co. v. Bittle,* 58 Mo. App. 384.

SHERWOOD, J:—Action in Grundy county, Missouri, before a justice of the peace by plaintiff against defendant company brought July 31, 1894, for work and labor done on the road of that company in the county named, the account amounting to $31.20, being for twenty-six days' labor at $1.20 per day.

On the cause coming up to the circuit court, in September, 1894, it was submitted to the court on the agreed statement of facts, which in substance is the following, so far as necessary to be stated:

During the months of June and July, 1894, plaintiff, the head of a family and resident of Grundy county, Missouri, did work and labor for defendant company, for the time and amount and in the county as heretofore stated. He did not during the time mentioned own property exceeding $50 in value. As much as $20 of the amount earned was earned within thirty days of the seventeenth of July, 1894, and the residue of the amount sued for was earned more than thirty days before the last mentioned date.

Defendant company, organized and existing under the laws of Illinois and Iowa, operates a line of railroad extending from Chicago, Illinois, through that state and the states of Iowa and Missouri, and passing through Lineville in Wayne county, Iowa, and Tren-

ton, Grundy county, Missouri, having station agents at each of said towns.

On the forementioned seventeenth of July, one Briegel, though resident in Grundy county, Missouri, instead of suing plaintiff in that county, went up into Iowa and brought suit by attachment and publication in Lineville, Wayne county, against plaintiff as a non-resident, before a justice of the peace on an account for goods sold plaintiff in Grundy county, Missouri, while both plaintiffs were residents of the county of Grundy. In such attachment suit defendant company was garnished in Lineville, Iowa, as the debtor of plaintiff, which suit was still pending and undetermined at the time this action was tried.

Under the law of Iowa nonresidence is a valid ground for attachment, and all the proceedings had in Iowa in and about the attachment suit were in usual form.

Defendant company answered as garnishee, admitting its indebtedness to plaintiff in the sum of $31.20, and claiming that such sum was due plaintiff, the attachment debtor, and that said amount was due for wages and was exempt from garnishment in its hands.

Shortly after the institution of the attachment suit already mentioned, plaintiff in the present action made affidavit setting forth that he was the head of a family, etc., etc.; that the sum in controversy was for wages and therefore exempt from attachment, garnishment, etc., and delivered such affidavit to defendant company with its answer, who filed the same with the justice before whom the attachment was pending, but that officer refused to allow the exemption. No personal service was had on plaintiff, the attachment debtor, in the action in Iowa, nor did he enter his personal appearance.

Each party was granted permission to use in evidence the statutes of Iowa.

On the trial plaintiff herein read in evidence the following section from those statutes, to wit:

"Sec. 3. And, whenever in any proceedings in any court in this state to subject the wages due any person to garnishment, it shall appear that such person is a nonresident of the state of Iowa; that the wages earned by him were earned outside of the state of Iowa, the said person, whose wages are so sought to be subjected to garnishment, shall be allowed the same exemption as is at the time allowed to him by law of the state in which he resides."

At the conclusion of the evidence, defendant company asked these declarations of law:

"1. Under the agreed statement of facts and evidence in this case, the court declares the law to be with the defendant, and the finding and judgment must be for the defendant.

"2. There is no evidence in this case that defendant herein is colluding with the plaintiff in the Iowa suit, or that it is willingly doing any act or encouraging any act tending to defeat plaintiff herein in his just rights."

Of which declarations number 2 was given, but number 1 refused.

These preliminaries of fact form the basis for the discussion of the following points of law:

1. In *Wyeth, etc., Co. v. Lang*, 127 Mo. 242, we approved the ruling of the Kansas City court of appeals in the same case, wherein it was held that debts have no *situs*, but may be attached in any state other than that in which the debtor is resident. 54 Mo. App. 147.

This point being settled in this way, leaves free for examination the other questions involved in this record.

2. The justice of the peace in Iowa had jurisdiction over the subject-matter of the action, to wit, over *that class of cases*, and when that jurisdiction created by the law was put in motion by the filing of the necessary papers, publication and the service of process on the garnishee, then jurisdiction over that particular case and the *res* therein involved was acquired.

The justice of the peace then, having jurisdiction, that is, the power to hear and determine all the issues presented in the cause before him, had the authority, privilege, and prerogative of rejecting the evidence showing that the present plaintiff was entitled under the statute of Iowa to hold the debt garnished as wages earned in Missouri.

And the fact that a portion of the debt, to wit, $20 of it, was in truth exempted under the laws of Missouri, because of having been earned within thirty days at the time of suit brought in Iowa, did not have the effect to abate by one jot or tittle the jurisdiction of the justice of the peace to decide to the contrary of what the statute of Iowa required. His jurisdiction to decide contrary to law was just as great as to decide in conformity with law. His power to decide *right* necessarily included the power to decide *wrong*. Error does not diminish jurisdiction. There is a broad and turnpike-like distinction between the *existence* of jurisdiction and its mere *exercise*. *Hunt v. Hunt*, 72 N. Y. 217; *Hagerman v. Sutton*, 91 Mo. 519, and cases cited; Works, Courts & Jurisdict., sec. 8, pp. 18, 19, *et seq.;* Brown, Jurisdict., secs. 1, 1*a;* Freeman, Judgments [4 Ed.], secs. 135, 136.

From these premises it follows that the jurisdiction of the justice of the peace in Iowa was full and complete, and consequently his judgment in the cause before him, even if partly or totally erroneous, rests, speaking generally, on as secure a basis as would the judgment of a

circuit or other court of general jurisdiction, and can not, at least in the method attempted, be overthrown by a collateral attack.

3.  Besides, it has been ruled in the state of Iowa, as well as in this state, that an exemption is a personal privilege, and can only be pleaded and taken advantage of by the execution or attachment debtor. Such plea of exemption can not be pleaded for him by his debtor, the garnishee. *Moore v. Railroad*, 43 Iowa, 385; *Osborne v. Schutt*, 67 Mo. 712. To the same effect is *Conley v. Chilcote*, 25 Ohio St. 320. This being the case the justice in Iowa did not err in rejecting any evidence of exemptions.

But whether he erred or not, could not, as heretofore seen, defeat his lawfully existing and lawfully acquired jurisdiction.

4.  This leads to the consideration of the question whether the circuit court erred in the refusal of defendant company's first declaration of law.

There is no doubt that under the provisions of article 4, section 1 of the constitution of the United States, full faith and credit must be accorded the public acts, records, and judicial proceedings of a sister state; and had the debt in this instance been condemned by a court of competent jurisdiction in the state of Iowa in a proceeding which is, or is equivalent to, a proceeding *in rem*, there can exist no doubt that a judgment thus rendered could not be contested in this state by a party to the record in Iowa, claiming the debt or property. *Moore v. Railroad, supra.*

In this case, however, no judgment has yet been rendered; the attachment proceeding in Iowa is, as the agreed statement recites, "still pending and undetermined;" but though undetermined, the proceeding is a judicial one in a sister state to which full faith and credit are due. The declaration of law was therefore

properly refused; but while this is so, yet the subsequent action of the circuit court does not meet with our entire approval, and for these reasons:

"In England, the doctrine has long been, that where one has been summoned as garnishee, and the defendant in the attachment before judgment of condemnation of the debt, sues the garnishee for that debt, the latter may plead the attachment in abatement; but not in bar, until judgment be. recovered against him. * * * The courts in this country have generally taken the same view." Drake, Attach. [7 Ed.], sec. 700.

And the basis of these rulings, as expressed by the learned author just quoted, is that: "In this proceeding it is an invariable rule, that the garnishee shall not be prejudiced, or placed in any worse situation than he would have been in if he had not been subjected to garnishment; that is, if obliged, as garnishee, to pay to the plaintiff the debt he owed to the defendant, he shall not be compelled again to pay the same debt to the defendant. When, therefore, he is sued for that debt, either before or after he has been summoned as garnishee, he must be allowed to show that he has been, or is about to be, made liable to pay, or has paid, the debt, under an attachment against the defendant, in which he has been charged as garnishee." *Ibid.*, sec. 699.

The question now being considered was determined at an early day in New York. A citizen of Baltimore was summoned as garnishee at that place. Afterward, on going to New York, the defendant in the attachment sued him there for the same debt, and he pleaded the attachment. Thereupon it was agreed in the latter case that if the court should consider the plea good in abatement, or in bar, the plaintiff should be nonsuit. KENT, C. J., after noticing the English decisions, said:

"If we were to disallow a plea in abatement of the pending attachment, the defendant would be left with-

out protection, and be obliged to pay the money twice; for we may reasonably presume that if the priority of the attachment in Maryland be ascertained, the courts in that state would not suffer that proceeding to be defeated by the subsequent act of the defendant going abroad, and subjecting himself to a suit and recovery here. The present case affords a fair opportunity for the settlement and application of a general rule on the subject. * * * If the force and effect of a foreign attachment is, then, in any case to be admitted, as a just defense, it would be difficult to find a sufficient reason for overruling a plea in abatement in the present case." *Embree v. Hanna*, 5 Johns. 101.

Expression has been given to the like views in New Hampshire, *Haselton v. Monroe*, 18 N. H. 598; Maine, *Ladd v. Jacobs*, 64 Me. 347; Pennsylvania, *Fitzgerald v. Caldwell*, 1 Yeates, 274, and other cases; South Carolina, *Mars v. Ins. Co.*, 17 S. C. 514; Michigan, *Near v. Mitchell*, 23 Mich. 382; Iowa, *Clise v. Freeborne*, 27 Iowa, 280; Maryland, *Brown v. Somerville*, 8 Md. 444; and by the circuit court and supreme court of the United States, *Cheongwo v. Jones*, 3 Wash. C. C. 359; *Wallace v. M'Connell*, 13 Pet. 136; *Mattlingly v. Boyd*, 20 How. 128.

In Massachusetts, though it is denied that the pendency of an attachment is good cause to abate the writ "for *non constat* that judgment will ever be rendered in the attachment suit," yet the fact of such pendency was held good ground for a *continuance* while the attachment was pending. *Winthrop v. Carlton*, 8 Mass. 456.

In Louisiana a like result was worked out by ordering a stay of further proceedings until the decision of the attachment. *Carrol v. M'Donogh*, 10 Martin (O. S.), 609.

Substantially the same end is attained in Vermont

oy giving judgment in favor of the creditor, the attachment defendant, against the garnishee, with stay of execution until the garnishee is released from the garnishment. *Morton v. Webb*, 7 Vt. 123. So in Alabama the court will either suspend all proceedings until the attachment suit is determined, or render judgment with a stay of execution, etc. *Crawford v. Slade*, 9 Ala. 887; *Montgomery, etc., Co. v. Merrick*, 61 *Ibid*. 534. And an intimation was there given that such a course would be pursued after judgment, notwithstanding an omission or an ineffectual attempt to plead the matter in abatement.

So in California the doctrine announced in Alabama is fully concurred in in *McFadden v. O'Donnell*, 18 Cal. 160.

In Georgia, the pendency of an attachment is not pleadable in bar, but when pleaded will induce the court so to mold the judgment as to stay execution so as to protect the garnishee against double payment. *Shealy v. Toole*, 56 Ga. 210.

Upon consideration we are of opinion that the ends of justice can be best attained by following the course authorized by the courts in Vermont, Alabama, California, and Georgia. To allow the defendant in the second suit to plead the attachment in the first in abatement, would frequently lead to unavoidable embarrassment, because, as suggested in the Massachusetts case, peradventure no judgment might ever be rendered in the attachment suit, and consequently the plaintiff in the second suit would have his suit abated and he be mulcted in costs, and then have to renew his suit perhaps after great delay.

Guided by these reasons, we reverse the judgment and remand the cause with directions to the circuit court to enter judgment for plaintiff for the amount

due him, to wit, $31.20, and grant a stay of execution so as to protect the defendant garnishee as herein-before indicated. All concur.