14 So.2d 865

**ISAAC v. COMISION REGULADORA DEL MERCADO DE HENEQUEN.**

No. 36904.

June 21, 1943.

Rehearing Denied July 13, 1943.

Monroe & Lemann and Walter J. Suthon, all of New Orleans, for plaintiff and appellant.

Spencer, Phelps, Dunbar & Marks, of New Orleans, for garnishee.

Henry & Kelleher, of New Orleans, for Insurance Co. of North America.

HAMITER, Justice.

Nacif Isaac, the assignee of a personal judgment obtained by one Nami Nebhan against Comision Reguladora del Mercado de Henequen, which is a Mexican corporation and referred to hereinafter as Comision, is appealing from a decision that dismissed on its merits a rule for a judgment against a garnishee, the Sterling Fire Insurance Company, and a codefendant in rule, the Insurance Company of North America.

The litigation, pending for a period of approximately two decades, presents for our consideration the following detailed, involved and complicated factual situation.

On July 1, 1919, the Comision sustained a loss by the burning of a quantity of its sisal then in storage in a warehouse in Indianapolis, Indiana. After the fire a dispute arose between two insurance companies regarding their proportionate liability for the loss, both having previously written binders that provided fire coverage on the sisal. These companies were the Insurance Company of North America and the Sterling Fire Insurance Company, called herein, respectively, North America and Sterling.

In order that the insured might be compensated for the loss immediately, and to prevent suit being filed against it, North America advanced to the insured Comision, through certain insurance counselors known as Smyth, Sanford & Gerard, Inc., the sum of $16,090.29; and the insured, in turn, assigned its loss claim to the named insurance counselor firm, the assignment being executed and accepted in New York City on January 26, 1920.

As a result of this transaction or arrangement an action was brought against Sterling for the purpose of recovering the proportion of the sisal loss attributable to that insurer's policy or binder. It was instituted in the name of the Comision in the Circuit Court of Marion County, Indiana, by attorneys for North America, and is termed hereinafter the Indiana suit.

After the occurrence of the mentioned fire, the advancement of funds by North America, the assignment of Comision's loss claim, and the institution of the Indiana suit, Nami Nebhan brought an action in the Civil District Court of Orleans Parish, Louisiana, against the Comision claiming $65,048.10. He proceeded by attachment in view of the nonresidence of the defendant and named five garnishees, none of which was an insurance company. The commencement of that action, which we call the Louisiana suit or proceedings, took place March 1, 1920. On the Comision's entering a general appearance, the proceeding became one in personam.

Some months later, by means of a supplemental petition filed by Nebhan, 49 insurance companies were made garnishees in the Louisiana suit, including Sterling. The garnishments, it appears, were issued because of a fire loss occurring in the City of New Orleans to certain sisal believed by Nebhan to have been the property of the Comision; but it actually belonged to an organization known as the Eric Corporation. Sterling's New Orleans attorneys answered the garnishment interrogatories in the negative, they then having in mind the Eric Corporation sisal loss and knowing nothing about the burning of Comision's sisal in Indianapolis; however, they subsequently learned of the last-mentioned loss, and on October 20, 1920, filed a supplemental answer in which all details of the Indiana suit, brought by the Comision against Sterling, were given. This supplemental answer recited the existence of a dispute as to whether or not a certain insurance binder was in force at the time of the fire; and it further stated that nothing was due and owing by Sterling to the Comision "unless it should be finally determined in said suit that it (Sterling) is liable for some amount to the said Comision under said binder."

Trial of the Indiana suit began on March 28, 1921; and three days later the jury brought in a verdict in favor of Comision and against Sterling for $8,402.-78. Thereupon Sterling filed a motion in that cause to stay all further proceedings, averring the pendency of the Louisiana garnishment against it and attaching thereto certified copies of the garnishment proceedings. The court, on May 5, 1921, overruled the motion and rendered judgment on the jury's verdict. Sterling, on the same day, appealed to the Supreme Court of Indiana.

On May 20, 1921, in the Civil District Court of Orleans Parish, a judgment in personam was rendered in favor of Nebhan and against Comision for the sum of $65,048.10. The judgment further decreed: "That the writs of attachment herein issued be maintained with costs; that the garnishments herein based thereon be maintained, and that the lien and privilege resulting from said attachments and garnishments herein be recognized and enforced upon the property attached and garnished herein; that said property be sold according to law, and that this judgment be paid from the proceeds of said sale by preference over the claims of all other creditors of said defendant."

The signing of Nebhan's judgment occurred six days later. No appeal from it was taken.

This judgment in the Louisiana suit was later assigned and transferred to Nacif Isaac, the substituted plaintiff; and he was judicially recognized, on January 5, 1922, as being subrogated to all of the right, title and interest of Nami Nebhan in and to it. Timely revival of the judgment occurred in 1931, and again in 1941.

The Supreme Court of Indiana, on March 11, 1924, affirmed the judgment obtained by Comision against Sterling in the Indiana suit. Sterling Fire Ins. Co. v. Comision, 195 Ind. 29, 143 N.E. 2, 7. In its opinion, the court had the following to say concerning the complaint made by Sterling's counsel about the trial court's overruling of the motion for a stay of further proceedings, namely:

" * * * We think this action of the court was not error. Of course, the appellant should be protected against having to pay its debt to appellee twice, but we do not believe the bringing of subsequent suits in another state could affect the appellee's right to a judgment in this case, although it might affect the appellee's right to issue an execution during the pendency of such other suits. If proper application is made, after judgment, to stay execution, where the same debt is sought to be garnisheed in another state, then an entirely different question would be involved. In such a case, there is ample authority for the court to act to protect the rights of the garnishee. Howland v. [Chicago, R. I. & P.] Railroad Co., 134 Mo. 474, 36 S.W. 29; Shull v. Missouri Pac. R. Co., 221 Mo. 140, 119 S.W. 1086; Virginia Fire, etc., Co. v. New York, etc., Co., 95 Va. 515, 28 S.E. 888, 40 L.R.A. 237.

"If the appellant is compelled to pay the judgment in this cause, then it would have protection against further proceedings in Louisiana. Virginia Fire, etc., Co. v. New York, etc., Co., supra. We think appellee was entitled to proceed to judgment in this cause, unaffected by the subsequent suits. It would seem that appellant has ample remedies to protect itself from having to pay the debt twice."

Application for a rehearing was regularly and timely made.

On May 13, 1924, Sterling filed in the Louisiana proceedings a second supplemental answer describing in detail the Indiana litigation to the time of and including the filing of the rehearing application in the Supreme Court, and suggesting that Nebhan or his assignee, Isaac, assert in the Indiana suit whatever claim or right he might have.

A third supplemental answer was filed by Sterling in the Louisiana suit on May 15, 1924, in which it averred that in the Indiana litigation the attorneys for Comision had taken a lien for $3,000 on the judgment recovered. Also the supplemental answer set forth that Smyth, Sanford & Gerard, Inc., had given notice on May 14, 1924, that the claim of Comision against Sterling in the Indiana suit had been assigned by Comision to said Smyth, Sanford & Gerard, Inc., on January 26, 1920.

On May 16, 1924, Isaac commenced an action against Comision in the Circuit Court of Marion County, Indiana, on the judgment in the Louisiana suit, proceeding by nonresident attachment and citing Ster-

ling as garnishee. This action, however, never progressed to trial or judgment, for Isaac dismissed it without prejudice several months later.

On June 16, 1924, Isaac presented a motion in the Louisiana suit alleging the proceedings previously occurring therein and also those in the Indiana suit; and, upon those allegations, the court ordered Sterling to show cause why judgment should not be rendered against it as garnishee and in favor of Isaac for the full amount of the affirmed Indiana judgment. This is the rule that the court later dismissed on its merits, from which decision the appeal now under consideration was taken.

The Supreme Court of Indiana, on June 25, 1924, denied the rehearing application of Sterling; and Sterling on the following day filed in the Circuit Court of Marion County a petition for a stay of execution of the affirmed judgment, he averring the pendency of the garnishment proceedings in the Louisiana suit. Comision, as the plaintiff in the Indiana suit, resisted Sterling's demand for a stay of execution, pleading that the institution of the Indiana suit and the assignment of Comision's claim to Smyth, Sanford & Gerard, Inc., occurred prior to the commencement of the Louisiana proceedings; and it further averred that said Smyth, Sanford & Gerard, Inc., had transferred and assigned such claim to North America on July 10, 1924.

Sterling's demand for a stay of execution was tried on January 13, 1925, and there was judgment rendered denying to Sterling the relief sought, recognizing North Amer-

ica as the owner of the judgment, and ordering that "execution forthwith issue in favor of Insurance Company of North America and against said Sterling Fire Insurance Company under the judgment heretofore rendered herein on May 5, 1921, * * *." There was no appeal from this decree.

Execution issued on the Indiana judgment on January 14, 1925; and on that same date Sterling paid the amount thereof to the Clerk of the Circuit Court of Marion County, Indiana, who delivered it to North America.

On August 6, 1929, Isaac moved in writing in the Civil District Court of Orleans Parish that the aforementioned rule to show cause in the Louisiana proceeding be fixed for trial on October 4, 1929, he suggesting in his motion that "said rule was continued indefinitely on the 17th day of October, 1924, and has never been refixed for trial". It was so ordered; but the trial did not then occur.

Later, on October 16, 1929, Isaac filed a supplemental petition praying for the amplification of the pending rule so as to join North America therein as an additional defendant; and that defendant was cited through the Secretary of State.

North America excepted to the court's jurisdiction ratione personae. The exception was overruled.

In three other supplemental answers filed in the Louisiana suit, being Numbers 4, 5 and 6, Sterling pleaded, respectively, (1) the Indiana proceedings in detail, especially the judgment against it and the payment thereof; (2) the full faith and credit

clause of the Federal Constitution, Art. IV, alleging that the judicial proceedings taken in the Indiana courts were conclusive as to the fact that Sterling was not indebted either to Comision or to North America; and (3) that a judgment against it and the enforcement thereof in these proceedings would constitute a deprivation of property without due process of law, in contravention of the Fourteenth Amendment to the Federal Constitution.

The rule, as amplified, was thereafter tried on its merits; and there was judgment in favor of defendants in rule, Sterling and North America, and against Nacif Isaac, the substituted plaintiff, dismissing the rule. This appeal followed.

Briefly stated appellant is seeking by means of this rule to obtain the enforced collection of the identical indebtedness originally owed by Sterling to Comision, and which the garnishee, Sterling, has already fully discharged by its compulsory payment to Comision's assignee, North America, under and by virtue of the execution of a judgment of another state. Should success attend appellant's demand, Sterling would be placed in the position of having to satisfy the same indebtedness on two different occasions.

It is the general rule that a previous judgment in another state on a garnished claim, rendered without fraud or collusion, is entitled to full faith and credit and constitutes a defense to the garnishment, irrespective of the propriety of the judgment, particularly when the garnishee has satisfied the judgment against him. Moreover, the courts are anxious to protect garnishees against double liability as a consequence of garnishment proceedings. 5 American Jurisprudence, verbo Attachment and Garnishment, Sections 784 and 781.

Presented in the case of Virginia Fire & Marine Insurance Company (Plaintiff in error) v. New York Carousal Manufacturing Company, 95 Va. 515, 28 S.E. 888, 40 L.R.A. 237, was a factual situation very similar to the one now before us. Therein one J. H. Turnage had sued in a court of North Carolina on a claim that he had against the insurance company. While that suit was pending and undetermined the manufacturing company obtained attachment in a circuit court of Virginia against its debtor, Turnage, and thereunder made said insurance company garnishee. Both proceedings involved the one debt due by the insurance company to Turnage. In each action, with the view of protecting itself against double liability, the garnishee filed a certified copy of the proceedings of the other. Before the attachment suit in Virginia was decided, the North Carolina court gave judgment against the insurance company in favor of Turnage for the full amount of the debt; and immediately thereafter that company, under execution, was compelled to pay the judgment in full. This payment was then pleaded in the attachment suit, but to no avail; for the circuit court of Virginia decreed the garnishee liable for the amount of the debt of the attaching creditor. In reversing that ruling and dismissing the garnishment the Supreme Court of Appeals

of Virginia appropriately and correctly, we think, reasoned:

"Where there is an action by a creditor against his debtor to recover a debt due to him pending in a court in one jurisdiction, and at the same time an attachment against the creditor and a garnishment against his debtor pending in another court in a different jurisdiction, to subject the same debt to the satisfaction of a liability of the creditor, there is a conflict among the authorities as to the proper course to be pursued by the respective courts.

"It is held by one line of the authorities that the court which first acquires jurisdiction over the debt has the right to maintain it to the end of the litigation, and enforce or subject the debt, irrespective of the proceedings in the other court; and that the court which last acquires jurisdiction as to the debt, whether it be by the action of the creditor to recover his debt or under a garnishment by his creditor, must dismiss the action or garnishment, when the pendency of the prior action or garnishment is duly brought to its notice. Wallace v. McConnell, 13 Pet. 136, [10 L.Ed. 95]; Whipple v. Robbins, 97 Mass. 107, [93 Am.Dec. 64]; [American] Bank v. Rollins, 99 Mass. 313; Embree v. Hanna, 5 Johns., [N.Y.], 101; Shrewsbury v. Tufts, 41 W.Va. 212, 23 S.E. 692; Drake, Attachm. (7th Ed.) § 700; 2 Wade, Attachm. § 494.

"The other line of the authorities holds that whether the action by the creditor to recover his debt or the garnishment be first commenced, the court in which the action by the creditor is pending should, upon due notice of the garnishment, either suspend all proceedings in the action to await the determination of the garnishment, or, which is deemed better, proceed to judgment on the debt, with a stay of execution on the judgment until the garnishment is determined, which stay can be removed or made perpetual, in whole or in part, as the exigency of the case may require. By this course the rights of the attaching creditor would not be injuriously affected, and the garnishee would at the same time be effectually protected against a double liability. Crawford v. Clute, 7 Ala. 157, [41 Am.Dec. 92]; Crawford v. Slade, 9 Ala. 887; Gaslight Co. v. Merrick, 61 Ala. 534, [44 Am.Dec. 463]; McFadden v. O'Donnell, 18 Cal. 160, [83 Am.Dec. 86]; McKeon v. McDermott, 22 Cal. 667; Harvey v. [Great Northern] Railway Co., 50 Minn. 405, 52 N.W. 905, [17 L.R.A. 84]; Howland v. [Chicago, R. I. & P.] Railway Co., 134 Mo. 474, 36 S.W. 29; Drake, Attachm. § 701; Gallego v. Chevallie, Fed.Cas.No.5,200, 2 Brock. 285, note at end of the opinion.

"It is unnecessary in this case, however, to decide between these conflicting authorities, for under neither line of them can the judgment appealed from be upheld.

\*     \*     \*     \*     \*

"It is a settled rule, founded upon obvious principles of natural justice, that a garnishee cannot be lawfully compelled to pay the same indebtedness twice. Nothing can be more clearly just than that a person who has been compelled by a court of competent jurisdiction to pay a

debt should not be compelled to pay it over again. Consequently, when he is in such a situation that, if charged as garnishee, this would be the result, he will not be charged, unless his situation is due to his own fault or neglect.

"The garnishee in this case was guiltless of any fraud or collusion. It took all necessary steps to prevent a recovery in the suit in the state of North Carolina of the debt against it. It made a full disclosure to the court of the facts of its situation. It duly pleaded the pendency of the attachment suit and the garnishment against it. It endeavored to obtain a suspension of all proceedings in the suit until the determination of the garnishment against it, but the court, holding that it had priority of jurisdiction, refused to stay the suit, and gave judgment, upon which it allowed execution to be issued.

"The garnishee is a corporation created under the laws of the state of Virginia, with its home office in the city of Richmond, and was engaged in the business of insuring property against loss by fire in this and other states. It had complied with the laws of North Carolina, by which foreign corporations were authorized to do business in that state, and under its laws, for the purposes of suit, was deemed a resident of that state, and amenable to a personal judgment. It had moneys in the hands of its agents in that state, and, execution having been issued on the judgment, it could not escape its payment.

"Under these circumstances, the circuit court should not have given judgment

against the garnishee. It had been compelled, after a full disclosure, to pay the debt once under the judgment of a tribunal having legal jurisdiction to decide and adequate power to enforce its decision, and had therefore an indisputable claim to protection against the second payment of the debt. Garity v. Gigie, 130 Mass. 184; Eddy v. O'Hara, 132 Mass. 56; [Lancashire] Insurance Co. v. Corbetts, 165 Ill. 592, 46 N.E. 631, [36 L.R.A. 640, 56 Am.St.Rep. 275]."

In the instant case, this court, like the appellate court of Virginia in the cited and discussed controversy, is not called upon to decide which of the above-mentioned two conflicting courses is proper where actions involving the same debt are pending in different jurisdictions; or, in other words, to determine the matter of priority as between such actions. No such issue is here presented. The proceeding in the Indiana court is not now pending, it having long since been settled by Sterling's payment of the debt under compulsion. The question before us is: Can that settlement now be successfully pleaded by Sterling in bar of the garnishment resorted to by appellant? We think that it can.

Sterling was organized under the laws of, and was domiciled in Indiana; hence the courts of that state had jurisdiction over it. Comision's suit was regularly instituted and tried in the Circuit Court of Marion County, Indiana, resulting in a personal judgment against Sterling. In the course of the proceedings there was made a full disclosure of the attachment

and garnishment matter pending in the Louisiana court, and Sterling futilely attempted to obtain the suit's suspension until the garnishment had been determined. A similar disclosure regarding the Indiana proceedings occurred in the Louisiana suit. On appeal to the Indiana Supreme Court the mentioned judgment was affirmed. A stay of the judgment's execution was thereafter unsuccessfully sought; and Sterling was compelled to and did pay, by order of the court, to Comision's recognized assignee, North America.

▮ Unquestionably the court that rendered the judgment and required its payment was one of competent jurisdiction, and the proceedings conducted therein were entirely regular. Furthermore, it does not appear that fraud or collusion attended the obtaining and rendering of the judgment or the confection of the assignments by which North America became the ultimate owner of Comision's claim. Neither can it be correctly said that Sterling was derelict in its duty to take all necessary steps to prevent a recovery against it. Under these circumstances, in our opinion, the garnishee should not be forced to again pay the debt.

In the early jurisprudence of our state are numerous cases tending to support this conclusion and approving the doctrine that a garnishee should be protected from double liability. These are Carrol v. McDonogh, 10 Mart., O.S., 609; Robeson v. Carpenter, 7 Mart., N.S., 30; West v. McConnell, 5 La. 424, 25 Am.Dec. 191; Broadnax v. Thomason, 1 La.Ann. 382; Woodruff v. French, 6 La.Ann. 62.

▮ It is said by appellant's counsel in their brief that "the judgment in the Louisiana suit maintaining the attachment and the garnishments thereunder is conclusive upon both Comision and Sterling." The judgment referred to is that rendered on May 20, 1921, above quoted, which condemned the Comision to pay to plaintiff Nebhan the amount of the latter's claim, and which further ordered the maintenance of the previously issued writs of attachment and the garnishments. That decree does not in any manner foreclose Sterling's rights to plead, as a bar to the demand now being made, the judgment of the Indiana court and the payment under compulsion. It was entered after Sterling had answered the garnishment interrogatories denying any indebtedness to Comision "unless it should be finally determined in said suit (Indiana) that it (Sterling) is liable for some amount to the said Comision under said binder." The decree did not condemn Sterling to pay to plaintiff the amount of Comision's claim; if it had done so there would have been no necessity or reason for the issuance and trial of the rule now under consideration.

Counsel for appellant cite Huron Holding Corporation v. Lincoln Mine Operating Company, 312 U.S. 183, 61 S.Ct. 513, 516, 85 L.Ed. 725; and, with reference to it, make the following statement in their brief: "This ruling is a logical consequence of the settled jurisprudence of the United States Supreme Court that two suits involving or affecting the same monied claim may be pending concurrently in courts of different jurisdictions; that the pendency

in one of these courts of the suit first instituted does not bar the other court from entertaining the suit subsequently instituted; that the two suits may proceed concurrently and the final judgment first rendered in one suit becomes res adjudicata upon the issues thereby decided."

This statement of the law, assuming it to be correct, can have no application here. No longer are there two suits pending concurrently over the same monied claim in courts of different jurisdictions, as before stated. The Indiana proceeding has been concluded and the judgment rendered therein paid. Rather, the language of the cited case seems to support the conclusion we have reached herein; for the following is therein said:

"Respondent's next contention is that even though Huron was compelled to pay the New York judgment as a result of attachment proceedings fully authorized by the New York statutes, the Idaho federal court not only can but should require a second payment of the same amount. The Circuit Court of Appeals so held. [9 Cir., 111 F.2d 438]. But since Huron, owing a judgment debt to Lincoln, paid it to a creditor of Lincoln under a valid New York judgment, it certainly should not be required to pay it a second time, except for the most compelling reasons. 'It ought to be and it is the object of courts to prevent the payment of any debt twice over.'

"It has not been urged here, nor was it urged in the courts below, that Huron was guilty of any negligence, misconduct or fraud in connection with the New York judgment. It has not been claimed that there was a failure to give Lincoln notice of the New York suit against it. No federal statute or constitutional provision is invoked as supporting the contention that the Idaho federal court was under a duty to disregard the effect of the payment made by Huron under the compulsion of the valid New York judgment.

\* \* \* \* \*

"Both the Idaho federal court and the New York state court decided matters within the respective authority of each. To give effect to the judgment rendered in the New York attachment proceedings cannot, in any manner, interfere with the jurisdiction of the Idaho court. While the Idaho court did have authority to issue an execution for the collection of an unpaid judgment, it would not have enforced an execution for the benefit of Lincoln if the judgment had previously been paid directly to Lincoln. Nor should it issue an execution when the money was paid to Lincoln's creditors by reason of valid attachment proceedings. For this would be to exercise the jurisdiction of a federal court to render ineffective that protection which a garnishee should be afforded by reason of having obeyed a judgment rendered by a state in the exercise of its constitutional power over persons and property within its territory. To take such a step would constitute a denial of that full faith and credit which a federal court should give to the acts of a state court."

Another issue in this case, argued and briefed by counsel for the respective litigants, deals with the relative priority be-

tween the assignment of Comision's claim and the garnishment of it. In this connection, it is remembered that Comision assigned its claim to Smyth, Sanford & Gerard, Inc., prior to the issuance of the garnishment; the garnishee, however, was not notified of the assignment until after the garnishment occurred. The deciding of this question of priority is unnecessary. Even if it be determined favorably to appellant, under our announced conclusion he could not recover herein.

Neither is it necessary for us to pass upon the jurisdictional issue raised by North America.

The judgment, for the reasons assigned, is affirmed.